JOHN F. SOUTHERLAND et al. v. THE BOARD OF ALDERMEN OF THE CITY OF GOLDSBORO, and THE CITY OF GOLDS-BORO.

*Voters—Constitutional Law.*

1. A majority of the qualified voters and not merely of those voting, must vote in favor of the measure in order to allow a municipal corporation to pledge its faith, loan its credit or contract any debt, under the provisions of Art. 7, §7, of the Constitution.

2. To constitute a person a qualified voter within the meaning of the Constitution, his name must be entered on the registration book.

(*Norment* v. *Charlotte*, 85 N. C., 387; cited and approved. *Railroad Co.* v. *Com'rs of Caldwell*, 72 N. C., 486; approved in part and overruled in part).

CIVIL ACTION for an injunction, tried before *Connor, Judge,* at April Term, 1886, of WAYNE Superior Court.

His Honor gave judgment for the defendants, and the plaintiffs appealed.

The facts appear in the opinion.

*Mr. W. R. Allen,* for the plaintiffs.
*Messrs. E. R. Stamps* and *C. B. Aycock,* for the defendants.

4

SMITH, C. J.   Under an act of the General Assembly, ratified on the 3d day of March, 1881, the corporate name of the town of Goldsboro was changed into that of the " City of Goldsboro," and provision made for its government by the annual election in the different wards of nine aldermen, and a mayor to be chosen by them, and the appointment of other necessary officers in its administration.

The Private Acts 1881, chapter 50, §29, declares: " that among the powers hereby conferred on the board of aldermen, they may borrow money only by the consent of a majority of the qualified registered voters, which consent shall be obtained by a vote of the citizens of the corporation, after thirty days' public notice, at which time those who consent to the same shall vote " approved," and those who do not consent shall vote "not approved," &c.

The board of aldermen, with a view to the establishment of water works, and to provide an adequate supply of water to meet the wants of the city, made an order to take the sense of the citizens upon the question of the issue of city coupon bonds, to the amount of $35,000, bearing six *per cent.* interest, the disposal of which would raise the means of paying for their construction.

Accordingly, an election was held on October 19th, 1885, at which were cast 307 votes, 275 in favor of, and 32 against the proposal.

The registry of voters in the city contained 528 names, and outside of that list there were 45 male persons who had resided in the State more than twelve months, in the city more than ninety days, and in the wards in which they lived, more than thirty days.

It thus appears, that while the approving votes are more than a majority of the voters whose names are registered, if the unregistered voters are added, they will not be a majority of the whole number.

The vote under the charter is sufficient to warrant the issue of the bonds, unless restrained by §7 of Article VII. of the Constitution, which declares that "no county, city, town, or other municipal corporation, shall contract any debt, pledge its faith, or loan its credit; nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

In *C. N. G. R. R. Co.* v. *Commissioners of Caldwell*, 72 N. C., 486, this clause was held, RODMAN, J., delivering the opinion, to require the majority vote to be of all those competent to vote, whether registered or not.

In *Harshman* v. *Bates County*, 92 U. S., 569, decided about the same time, a similar construction was put upon a clause in the Constitution of Missouri, which forbade any county, city or town, "to loan its credit to any company, association or corporation, unless *two thirds of the qualified voters* of such county, city or town, at a regular or special election to be held therein, shall assent thereto," and a statute making two thirds of the qualified voters *voting* sufficient, was declared repugnant to the Constitution and void.

In a subsequent case, *County of Cass* v. *Johnston*, 95 U. S., 360, the ruling was reversed, and the statute held to be declaratory of the true meaning of the Constitution. This contrariety of decisions is noticed and commented on in *Norment* v. *Charlotte*, 85 N. C., 387; and the general ruling, that a majority of the qualified voters, and not of those voting only, must be obtained, left undisturbed.

But who are the qualified voters? In the case just cited, RODMAN, J., says, "a qualified voter is one who is entitled to be registered as a voter, and who is qualified to vote upon registration," without adverting to the omission in the finding of the requirement of naturalization unless the voter be a citizen, so that we can know affirmatively that the unregistered were competent voters under the Constitution, Art. 6, §1.

The next section declares, that no person shall be allowed to vote without registration, or to register without first taking an oath or affirmation to support and maintain the Constitution and laws of the United States and the Constitution and laws of North Carolina not inconsistent therewith. This, then, is an indispensable condition of the right to vote, without compliance with which, the elector, whatever his personal qualifications may be, cannot exercise his franchise.

Nor did the Constitution intend in using the words "qualified voters" to include those who were not registered, and could not vote until they were, as well as those whose qualifications had been passed on, and whose names were on the registry. The inconveniences of a construction which makes it necessary to traverse a county or district in search of outside voters before it can be determined whether a majority of all have voted upon a proposed loan or tax, are very great and manifest, and in closely contested cases would well nigh neutralize the provision. It would require the Court to examine into and decide upon the qualifications, instead of leaving that duty to be performed by those charged with the registration of those alleged to have the right to vote. As a prerequisite, there is of necessity a registration, and as this is prescribed as a condition inseparable from the right to vote, in the Constitution itself, is it not a more reasonable interpretation to confine the expression, "qualified voters," to those who have been admitted to registration, and had at the election a right then to vote, the registry being *prima facie* evidence of the qualifications of all who are registered? This would remove many of the impediments to a judicial determination of the state of the vote and the result of an election, which must be encountered in the construction which gives the larger import to the clause.

To transfer from those whose office it is to inquire into and ascertain the competency of the electors, and put their names upon the registry, to the Courts, where each person's right to

vote may become the subject of controversy, is to impose an unreasonable amount of labor upon the latter, that could hardly have been in contemplation of the framers of the Constitution, while by frequent revisions of the registry, every essentially useful purpose would be attained. This difficulty may have had its influence in bringing about a change of judicial opinion, which counts none but such as vote, in determining the issue, those not voting being considered as acquiescing in the majority vote.

We are therefore of opinion that the outside unregistered voters ought to be omitted from the count, for the reason that: I. They not being registered are not qualified voters in the meaning of the Constitution, and II. The facts found do not show that they possess the qualifications necessary to registration.

There is no error, and the judgment must be affirmed.

No error.                                        Affirmed.