P. D. WILLIAMS ET ALS. v. COUNTY COMMISSIONERS AND BOARD OF EDUCATION OF POLK COUNTY.

(Filed 4 December, 1918.)

1. Taxation—School Districts—Elections—Constitutional Law.

The taxing of a statutory special school district is not for a necessary expense and falls within the provision of our Constitution, Art. VII, sec. 7, requiring the approval of a majority of the qualified voters therein.

2. Elections—Qualified Voter—Majority Vote—School Districts.

One who is qualified to vote at an election to establish a statutory special school district, requiring the levy of a tax, must be duly registered pursuant to law and having the present right to vote; and the requirement that the measure shall be carried by a "majority of the qualified voters," by correct interpretation, signifies a majority of the qualified voters of the district appearing upon the registration book, and not a majority of those voting in the election.

3. School Districts—Statutes—Requirements—Interpretation.

A special school district may not be formed under the provisions of our statutes if the proposed district has less than 65 children of school age, unless the same shall contain 12 square miles of territory, etc.; and where it has been properly established that the extent of the proposed area meets the requirement of the statute, the provision as to the number of children of the school age, within the district, becomes immaterial.

**4. Elections—Qualified Voter—Poll Tax.**

> A voter within a proposed special school district who has not paid his poll tax is disqualified to vote at the election called for determining the question submitted.

**5. Elections—Registration—Registrar—Erasing Names—Request of Voter— Statutes.**

> When one who is qualified to vote at an election upon the question of establishing a statutory special school tax district has duly registered according to law, the registrar is without authority to erase his name from the registration book, at his request, the registration book being in the nature of a public record, which may not be changed, except by some method provided by law; the power to order a new registration or revise the "polling book" of voting precincts being conferred by statute on the county board of elections. Gregory's Supplement, sec. 4305.

**6. Taxation—Injunction—Majority Vote.**

> Where it appears from the trial of the action upon its merits that the proposition to establish a special school-tax district has been carried by a majority of one vote, ascertained only after the registrar had improperly erased the name of a voter from the registration book, the restraining order theretofore granted should be made permanent.

ACTION, tried before *Cline, J.,* and a jury, at Spring Term, 1918, of POLK.

The action was to set aside the formation of a special school-tax district in said county to be known as "Sunny View," and to restrain the collection of the tax therein on the ground:

1. That same was not of sufficient area and did not contain the number of pupils required for the purpose.

2. That the special tax contemplated had not received a majority of the qualified voters of the proposed district.

On denial of the impeaching allegations, the jury rendered the following verdict as relevant to the questions presented:

1. Were there less than sixty-five children of school age in the proposed new special school district at the time it was laid out by S. B. Edwards under the direction of the county board of education? Answer: "Yes."

2. If less than sixty-five, does this special school district contain at least twelve square miles in area? Answer: "Yes."

3. Was W. T. Brown a registered qualified voter with the right to vote in the special school election in July, 1917? Answer: "Yes."

4. Was Aden Bennet a qualified registered voter at said election? Answer: "No."

5. Was F. E. Whitesides a registered qualified voter in said election? Answer: "No."

6. Was W. Brookshire Brown a duly registered and qualified voter in said election? Answer: "Yes."

·7. Was Fred Gibbs a duly registered and qualified voter in said election? Answer: "Yes."

Upon the verdict and certain recited admissions, the court entered judgment as follows:

"This cause coming on to be heard, and being heard before his Honor, E. B. Cline, judge presiding, and a jury, the jury answered the issues submitted to them as appear of record, reference to which is hereby made. It was shown by the registration book and admitted that the total number of names therein for said school-tax election was originally forty-three, and that two of these, to wit, Ayden Bennet and F. E. Whitesides, were marked off the book by the registrar. It is also admitted that W. Brookshire Brown and Fred Gibbs did not vote in said election and were not counted as registered qualified voters in making up the return. Also that the return found and certified that twenty-one votes were cast in favor of the school tax and eighteen against. Upon the verdict and these admissions, either shown in the pleadings or made upon the trial, it is now, therefore, on motion of defendants' counsel, considered, ordered and adjudged by the court that at said special school-tax election a majority of the registered qualified voters cast their ballots in favor of the school tax, and, therefore, that said election resulted in the approval and adoption of the special tax in the manner prescribed by law.

"It is further considered, ordered, and adjudged that the restraining order and injunction granted in said cause be and the same is hereby dissolved and vacated.

"It is further considered and adjudged that the said school district was laid out and established according to law, and that the proper authorities are entitled to proceed as they may be ·advised to levy and collect the tax which is the subject of this controversy.

"The defendants will go hence without day and recover of the plaintiffs and their surety their costs to be taxed by the clerk."

From judgment, plaintiffs appealed, assigning errors.

*Solomon Gallert for plaintiff.*
*Smith & Shipman for defendants.*

HOKE, J. The present statute on the subject (Revisal, sec. 4129, amended in 1909, ch. 856, and 1911, ch. 135, now appearing in Gregory's Supplement, p. 659) prohibits the formation of school districts having less than sixty-five children of school age unless the same shall contain at least twelve square miles of territory, or unless it is separated by dangerous natural barriers from a schoolhouse in the district of which the proposed new district is a part, etc., and the jury having found that

the proposed district contains the twelve square miles of territory the first ground of plaintiffs' complaint is removed by the verdict.

As to the objection to the proposed tax levy, our decisions on the subject are to the effect that a taxing district of this character is within the provisions of our Constitution, art. 7, sec. 7, restraining counties and other municipal corporations from contracting debts, levying taxes, etc., except for the necessary expenses thereof, unless approved by a majority of the qualified voters therein. *Stephens v. Charlotte,* 172 N. C., 564; *Smith v. School Trustees,* 141 N. C., 143, and that the subject of this proposed tax is not a "necessary expense" within the meaning of this inhibition. *Sprague v. Comrs.,* 165 N. C., 603; *Hollowell v. Borden,* 148 N. C., 255.

It is also held that a qualified voter is one having the constitutional qualifications for the privilege, who is duly registered pursuant to law, and has the present right to vote at the election being held. *Pace v. City of Raleigh,* 140 N. C., 65, and, further, that the term "majority of the qualified voters" required by the Constitution to approve such a measure as this, by correct interpretation, signifies a majority of the qualified voters in the district and not a majority of those voting in the election. *Clark v. Statesville,* 139 N. C., 490; *Duke v. Brown,* 96 N. C., 127.

An application of these principles to the facts presented in the record are, in our opinion, against the conclusion reached by the lower court, and the judgment directing the levy of the tax must be set aside and a new trial had.

From these facts it appears that while thirty-nine votes were cast at the election, twenty-one for and eighteen against the proposed tax, on the morning of the election there were forty-three names on the registration list, all duly qualified and registered voters except Aden Bennet, who had not paid his poll tax, thereby being disqualified under the decision in *Pace v. Raleigh, supra.* Leaving out his name, there were forty-two duly qualified voters in the district having the present right to vote. In order to reduce this number so as to make twenty-one a majority for the proposition, as the law requires, it becomes necessary to uphold the action of the registrar, who, just prior to the opening of the polls or during the day, erased from the registration list the name of the voter, F. E. Whitesides, claiming authority to do so by reason of a request from him, the registrar, testifying to the matter as follows: "I erased the name of F. E. Whitesides from the registration book. He simply asked me to. I did not erase it when he asked me; he wrote me a letter to erase it and I marked it off the morning of the election. He first asked me in the presence of two men, as well as I recollect it. I did it that morning. He did not appear and ask to vote. . . ." And

again: "I scratched F. E. Whitesides' name off without any challenge or anything, and yet I certify here he had paid his poll tax. I just marked it off the book because he asked me to take it off. I took it off without any ceremony or examination and any notice."

On this, the evidence relevant to the question, we are of opinion that the registrar was without lawful authority to erase the name of the voter from the registration list and the validity of the election must be determined as if his name regularly appeared thereon. While the Constitution and statutes have not made either registration or voting compulsory, when the list of resident voters is made out pursuant to law, it becomes in the nature of a public record, one in which the public have a vital interest, and it should not be altered or depleted at the mere wish of the individual voter who is still a resident of the district and otherwise qualified for registration. Such a position would tend to introduce too great an element of uncertainty into elections of this character and might at times afford too great an opportunity for fraud and imposition. We are well assured that a record of this character should only be changed in some way and by some method provided by law. The power to order a new registration or to revise the "polling book" of voting precincts is conferred by the statute on the county board of elections. Laws 1913, ch. 138; Gregory's Supplement, sec. 4305, and in *Casey v. Dare County,* 168 N. C., 285, decided intimation is given that the registrar has no power himself to erase names from the registration list.

For the error in upholding the action of the registrar in erasing from the list the name of the voter, F. E. Whitesides, and by reason of which the jury have found that he was not a qualified voter, there must be a new trial; and if, on a second hearing, the facts are as now presented, the proposed tax levy should be enjoined.

New trial.