STATES' RIGHTS DEMOCRATIC PARTY, an Unincorporated, Voluntary, Political Association, PHILIP S. FINN, JR., State Chairman of STATES' RIGHTS DEMOCRATIC PARTY, and DAVID CLARK and PHILIP S. FINN, JR., on Behalf of Themselves and More Than 10,000 Qualified Voters of North Carolina, Petitioners, v. NORTH CAROLINA STATE BOARD OF ELECTIONS, and HUBERT OLIVE, Chairman, and ADRIAN MITCHELL, WALTER H. WOODSON, J. R. MORGAN, and THOMAS C. CARTER, Members Constituting the N. C. STATE BOARD OF ELECTIONS, Respondents.

(Filed 8 September, 1948.)

1. **Elections § 7—**

Upon the filing of a petition under G. S., 163-1, for the creation of a new political party, it is the duty of the State Board of Elections, in the first instance, to determine whether the petition is in accordance with the statutory requirements.

2. **Same—**

In determining whether the petition for the creation of a new political party meets the statutory requirements, it is the duty of the State Board of Elections to determine whether the petition is signed by at least 10,000 registered voters, which it may do by resort to the registration books through the agency of the county boards of elections. G. S., 163-10. In the present case petitioners offered to bear the expense of checking the signatures against the registration books so that the adequacy of public funds expendable for this purpose did not arise.

3. **Same—**

The State Board of Elections is not under duty to determine the sufficiency of a petition for the creation of a new political party at the time

179

the petition is filed, but the Board is given approximately sixty days for this purpose between the time the petition is required to be filed, G. S., 163-1, and the time the ballots must be printed and delivered to the county boards of elections, G. S., 163-151.

### 4. Same: Constitutional Law § 21—

In order to meet the constitutional requirement of due process, the State Board of Elections must give petitioners for the creation of a new political party notice and an opportunity to be heard before rejecting the petition as insufficient.

### 5. Elections § 7—

The State Board of Elections has power to make reasonable rules and regulations for carrying into effect the law it was created to administer, but it cannot promulgate rules and regulations which conflict with any provisions of the statute. G. S., 163-10 (2) (15), G. S., 163-183.

### 6. Constitutional Law § 8c: Administrative Law § 3—

The General Assembly cannot delegate authority to make law, and an administrative agency has no power to promulgate rules and regulations which alter or add to the law it is set up to administer.

### 7. Administrative Law § 4—

A *petition* is a *formal written request* made to some official or body having authority to grant it; a *certificate* is a document in which the issuing officer states that a thing has or has not been done, or that an act has or has not been performed.

### 8. Elections § 7—

The State Board of Elections is without authority to add to the statutory requirements of a petition for the creation of a new political party under G. S., 163-1, an additional requirement that the petition be accompanied by certificates from the county boards of elections certifying that in the aggregate at least 10,000 of the signers of the petition are registered voters who have not voted in any primary election of any existing political party during the year in which the petition is signed.

### 9. Same—

The primary laws have no application to new political parties created under G. S., 163-1, and the State Board of Elections has no power to promulgate regulations making non-participation in a primary of an existing political party during the year a qualification of electors signing a petition for the creation of a new political party, there being no such qualification implicit or explicit in the statute.

### 10. Same—

A regulation of the State Board of Elections that petitioners for the creation of a new political party must show that the signers of the petition were registered voters who had not participated in the primary election of any existing political party during the year is void, and such regulation cannot be upheld by striking therefrom, under the guise of legal construction, that part of the regulation requiring that the certificate show

that the signers had not participated in a primary of any existing political party.

## 11. Administrative Law § 3—

In construing the regulation of an administrative agency it must be presumed that every part of the regulation was promulgated for a purpose and intended to be carried into effect, and the courts may not uphold such regulation by striking therefrom such portions as are beyond the authority of the agency.

## 12. Elections § 7: Mandamus § 2a—

Where a petition which meets all of the requirements of G. S., 163-1, is aptly filed, it is the statutory duty of the State Board of Elections to cause the names of the nominees of such new political party to be printed on the official ballot, and *mandamus* will lie to compel the performance of such duty.

STACY, C. J., dissenting.

APPEAL by respondents from *Harris, J.*, August 20, 1948, in proceeding in the Superior Court of WAKE County.

On March 20, 1948, the State Board of Elections, a political agency of North Carolina created and existing under chapter 163 of the General Statutes, adopted certain rules and regulations for the avowed purpose of implementing the provisions of G. S., 163-1, governing the creation of new political parties in North Carolina. These rules and regulations were filed with the Secretary of State on March 25, 1948, and are summarized below in so far as they are germane to the controversy resulting in this litigation.

Regulations Nos. 2 and 4 prescribed, in substance, that any group of voters desiring to create a new state political party under G. S., 163-1, must attach to and file with the petition required by the statute certificates from chairmen of county boards of elections in the several counties in which signatures to the petitions are obtained, certifying to the State Board of Elections in the aggregate that an examination of the registration and poll books discloses that at least 10,000 of the signers of the petition are registered voters who have not "voted in the primary election of any existing party during the year in which the petition is signed by the voters." Regulation No. 5 stipulates that upon request of any group of voters desirous of creating a new political party and upon payment by such group of a fee of ten cents for each name checked to the election officer doing the checking, the chairman of any county board of elections in any county in which signatures to the statutory petition are obtained shall cause the names of the electors of his county signing the petition to be checked against the registration and poll books of his county and shall issue and present to such group of voters for attachment to their petition the certificates required by Regulations Nos. 2 and 4.

At least ninety days before the general election scheduled for November 2, 1948, to wit, on August 3, 1948, the individual petitioners and other voters of the State undertook to organize the States' Rights Democratic Party as a state political party under G. S., 163-1, by filing with the State Board of Elections a petition signed by 18,681 persons representing themselves to be qualified voters in various counties of North Carolina. The contents of the petition other than the signatures of the signers and their voting precincts were as follows:

"We, the undersigned qualified voters of North Carolina, hereby declare our intention of organizing a state political party to be known and designated as States' Rights Democratic Party, and we also declare our intention of participating in the next succeeding election to be held on November 2, 1948; and ask to have the names of candidates of the party for president and vice president of the United States and/or electors for the same to appear on the ballot. The name and address of the State Chairman of the States' Rights Democratic Party is Col. Philip S. Finn, Jr., of 1325 Oakland Street, Hendersonville, North Carolina."

It is noted here that the State Board of Elections has never questioned the genuineness of the signatures appearing upon the petition.

The petition was not accompanied by any certificates from any chairmen of any county boards of elections as required by Regulations Nos. 2 and 4 of the State Board of Elections, but contemporaneously with the filing of the petition, the petitioners offered to pay the cost of checking the names of the signers of the petition against the registration books of their respective counties at the rate specified in Regulation No. 5.

On August 4, 1948, the State Board of Elections rejected the petition filed with it on the preceding day and refused to print the names of any of the nominees of the States' Rights Democratic Party on the ballot to be used in the general election on November 2, 1948, because the petitioners and their associates had not attached to and filed with the petition certificates from chairmen of any county boards of elections certifying the matters prescribed by Regulations Nos. 2 and 4. In making this ruling, the State Board of Elections did not challenge the genuineness of any of the signatures appearing on the petition, or the accuracy of the claim of the petitioners that at least 10,000 qualified voters had signed the petitions, and did not request the petitioners to submit any evidence relating to these matters.

Between the 10th and the 20th days of August, 1948, certain of the signatures upon the petition selected by petitioners were checked against the regular registration books by the chairmen of the county boards of elections in the counties in which such signatures had been obtained pursuant to an agreement between the petitioners and the State Board of Elections that the cost of such checking was to be borne by the peti-

tioners in the manner and at the rate specified in Regulation No. 5 and that such checking was not to constitute a waiver of the prior action of the State Board of Elections rejecting the petition or a waiver of any of the provisions of the rules and regulations adopted by the State Board of Elections on March 20, 1948. The checking of these selected signatures against the regular registration books under the circumstances stated revealed that 12,584 of the same were the signatures of duly registered and qualified voters, and this fact was certified to the State Board of Elections by the local election officers before the hearing in this proceeding in the Superior Court. But no effort was ever made by the petitioners to show whether the signers of the petition had or had not voted in the primary elections of the Democratic or Republican parties held in May and June, 1948.

On August 16, 1948, the petitioners brought this proceeding against the respondents, praying a declaration that the petitioners and the group of voters acting with them had duly qualified as a new political party under G. S., 163-1, under the name of States' Rights Democratic Party and were entitled as such to participate in the general election to be held on November 2, 1948, and asking that a writ of *mandamus* forthwith issue compelling the respondents to cause the names of J. Strom Thurmond and Fielding Wright, the nominees of the party for President and Vice-President, to be printed on the official ballot to be used in such general election.

Trial by jury was waived, and the proceeding was heard by the court below on August 20, 1948. The respondents "waived all questions as to the time and place of the hearing and stated that they raised no question as to the form of the action or matters of procedure" to the end that the claim of the petitioners and the group of voters acting with them to recognition as a new political party under the statute might be speedily decided on the merits. It was agreed by counsel both in the court below and here that this proceeding should be treated as an application for a writ of *mandamus* and it has been so regarded by the parties at all stages.

After hearing the admissions of the parties and the testimony adduced by them, the trial court made certain findings of fact. Among them were the following: "That on August 3, 1948, there were filed with respondent board petitions signed by more than 10,000 qualified registered voters, declaring their intention of organizing a state political party under the name of States' Rights Democratic Party, and stating the name and address of the State Chairman of such party, and also declaring their intention of participating in the next succeeding election and requesting to have the names of candidates of said political party for President and Vice-President of the United States and/or electors for the same to appear on the ballot, and contemporaneously with the filing of said

petitions, the petitioners offered to pay the cost of checking the names of said petitioners against the general election registration books in the several counties. That the petitioners at the time of filing said petitions did not file with the respondent Board of Elections any certificates of any chairmen of any county boards of elections as required by the rules and regulations of the said Board adopted on March 20, 1948."

The court below concluded, in effect, that Regulations Nos. 2 and 4 of the State Board of Elections were "unreasonable and invalid." Upon the admissions of the parties, its findings of fact, and its conclusions of law, the trial court rendered judgment declaring that the States' Rights Democratic Party had fully qualified as a new state political party under G. S., 163-1, and was entitled as such to participate in the general election to be held on November 2, 1948, and issuing a writ of *mandamus* ordering the respondent, the State Board of Elections, to cause the names of J. Strom Thurmond and Fielding Wright, the nominees of the party for President and Vice-President, to be printed on the official ballot for use in such general election as provided by law. From this judgment, the respondents appealed to this Court, assigning errors.

*Edwin H. Malone and J. L. Emanuel for petitioners, appellees.*

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for respondents, appellants.*

ERVIN, J.   G. S., 163-1, authorizes and regulates the creation of new political parties in North Carolina. This statute defines such a party to be "any group of voters which shall have filed with the State Board of Elections, at least ninety days before a general state election, a petition signed by ten thousand qualified voters, declaring their intention of organizing a state political party, the name of which shall be stated in the petition together with the name and address of the state chairman thereof, and also declaring their intention of participating in the next succeeding election." The statute further provides that "when any new political party has qualified for participation in an election as herein required, and has furnished to the State Board of Elections the names of such of its nominees as is desired to be printed on the official ballots by the first day of September prior to the election, it shall be the duty of the State Board of Elections to cause to be printed on the official ballots furnished by it to the counties the names of such nominees. When any political party fails to cast three per cent of the total vote cast at an election for governor, or for presidential electors, it shall cease to be a political party within the meaning of this chapter."

Undoubtedly the duty of determining whether the petition in controversy was in accordance with the requirements of G. S., 163-1, devolved

in the first instance upon the State Board of Elections. *Gill v. Wake County,* 160 N. C., 176, 76 S. E., 203, 43 L. R. A. (N. S.), 293; *In re Murphy,* 189 App. Div., 135, 178 N. Y. S., 236; 9 R. C. L., Elections, section 18. The performance of this duty necessarily required the Board to ascertain whether the petition had been signed by at least 10,000 qualified voters. Since an elector must be registered to be qualified, it was incumbent upon the State Board of Elections to determine whether at least 10,000 of the signers of the petition were registered. G. S., 163-27; *Williams v. Commissioners,* 176 N. C., 554, 97 S. E., 478; *Clark v. Statesville,* 139 N. C., 490, 52 S. E., 52; *McDowell v. Construction Co.,* 96 N. C., 514, 2 S. E., 1; *Southerland v. Goldsboro,* 96 N. C., 49, 1 S. E., 760.

The Board has the authority to determine the registration or non-registration of the signers of a petition for the creation of a new political party by an examination of the registration books. *Wicksel v. Cohen,* 262 N. Y., 446, 187 N. E., 634. Indeed, the plenary power vested in the Board by the statutes to supervise elections and to require reports from local election officers affords a reasonable basis for the deduction that the Legislature intends the Board to resort to the registration books for this purpose through the agency of the county boards of elections in the several counties as a mere matter of administrative routine before calling upon the signers of the petition to prove that it has been signed by the requisite number of qualified voters. G. S., 163-10. The task of inspecting the registration books through the agency of local election officers to determine whether at least 10,000 of the signers of a petition for the creation of a new political party are registered voters is not an insuperable one. As a matter of fact, the record discloses that it was ascertained without difficulty in this way within a space not exceeding ten days that 12,584 of the signers of the petition in controversy were duly registered. Moreover, any suggestion of an inadequacy of public funds expendable for this purpose by the State Board of Elections or by the county boards of elections in the several counties is without merit in the case at bar because the petitioners here offered to bear the expense of any necessary inspection of the registration books by election officers at the time when the petition was filed with the State Board.

When it enacted the statute relating to the creation of new political parties, the Legislature did not impose upon the State Board of Elections any duty to make a determination as to the sufficiency of the petition at the time of its filing. The reverse is true. It prescribed that the petition must be filed with the State Board of Elections "at least ninety days before a general state election." G. S., 163-1. As G. S., 163-151, specifies that ballots for use in general elections shall be printed and delivered to the County Boards of Elections "at least thirty

days previous to the date of elections," the indisputable purpose of the provision of G. S., 163-1, concerning the time for filing a petition for the creation of a new political party was to afford the State Board of Elections approximately sixty days as the time in which to determine the sufficiency of the petition and to print ballots for use in the general election bearing the names of the nominees of the new political party in the event the petition for its creation is found to conform to the statute.

Manifestly the statutes creating the State Board of Elections and defining its duties contemplate that the Board shall give petitioners for the creation of a new political party under G. S., 163-1, notice and an opportunity to be heard in support of their petition before rejecting it or adjudging it insufficient. 42 Am. Jur., Public Administrative Law, section 135. Indeed, notice and hearing in such case are necessary to meet the constitutional requirement of due process of law—"a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." *Dartmouth College v. Woodward,* 4 Wheat., 518, 4 U. S. (L. Ed.), 629; N. C. Const., Art. I, section 17.

Here, however, the State Board of Elections peremptorily rejected the petition of the group of voters desiring to create the States' Rights Democratic Party without notice or an opportunity to be heard upon the question as to whether their petition had been signed by 10,000 qualified voters.

G. S., 163-1, is so plain and unambiguous as to speak for itself. The record here establishes indisputably that the individual petitioners and the group of voters associated with them have performed with exactness and nicety every condition set out in this statute as a prerequisite to their existence as a new political party under the name of States' Rights Democratic Party. Despite this fact, however, the respondents most earnestly insist that the plain words of G. S., 163-1, must be set at naught and the manifest will of the 12,584 qualified voters signing the petition must be thwarted because the petitioners and those acting with them did not attach to the petition certificates from chairmen of county boards of elections in the several counties in which signatures to the petition were obtained certifying in the aggregate that an examination of the registration and poll books disclosed that at least 10,000 of the signers of the petition were registered electors who did not vote in the primary elections of either the Democratic or Republican parties in 1948 as required by Regulations Nos. 2 and 4 adopted by the State Board of Elections on March 20, 1948. Hence, it appears that this appeal necessitates a determination as to the validity of these regulations.

The General Assembly has conferred upon the State Board of Elections power to make reasonable rules and regulations for carrying into effect the law it was created to administer, but has annexed to the grant

of this power the express limitation that such rules and regulations must not conflict with any provisions of such law. G. S., 163-10, subsections 2 and 15; G. S., 163-183; *Burgin v. Board of Elections,* 214 N. C., 140, 198 S. E., 592. It seems clear that this specific restriction would have been inseparably wedded to the authority granted even if the statutes had been silent with respect to it. This is true because the Constitution forbids the Legislature to delegate the power to make law to any other body. *Provision Co. v. Dares,* 190 N. C., 7, 128 S. E., 593. As the text writer in 42 Am. Jur., Public Administrative Law, section 99, has so well said: "Administrative rules and regulations, to be valid, must be within the authority conferred upon the administrative agency. The power to make regulations is not the power to legislate in the true sense, and under the guise of regulation legislation may not be enacted. The statute which is being administered may not be altered or added to by the exercise of a power to make regulations thereunder."

It is to be observed that a "petition" is one thing, and a "certificate" is another. A petition is a formal written request made to some official or body having authority to grant it. *State ex rel. Jackson v. School Dist. No. 2,* 140 Kan., 171, 34 P. (2d), 102. But a certificate imports a document in which the issuing officer states "that a thing has or has not been done, that an act has or has not been performed." *Dolan v. United States,* 133 F., 441, 69 C. C. A., 274.

G. S., 163-1, requires a group of voters desirous of creating a new political party to file with the State Board of Elections "a petition" signed by at least 10,000 qualified voters with contents as specified in the statute. While professing to act by way of regulation, the State Board of Elections adds to the statutory requirements concerning the petition the additional mandatory condition that the petitioners must attach to and file with the petition the "certificates" described in Regulations Nos. 2 and 4. Consequently, the State Board of Elections has decreed, in substance, that a petition for the creation of a new political party complying strictly with G. S., 163-1, is legally inoperative unless the petitioners attach thereto and file therewith certificates conforming to such regulations. This is legislating rather than regulating, and vitiates these regulations.

The respondents urge, however, that the regulations here considered are not intended to add anything to the statutory requirements relating to petitions for the creation of new political parties. They assert that an elector is a qualified voter within the purview of G. S., 163-1, only if he meets these two conditions, namely: (1) He must be registered; and (2) he must not have voted in the primary election of any existing political party during the year in which the petition is signed. They maintain that Regulations Nos. 2 and 4 are designed merely to establish

an expeditious procedure for determining whether a petition for the creation of a new party has been signed by at least 10,000 registered voters who did not vote in the primary election of an existing party during the year in which the petition is signed, and are admirably adapted to secure this end, and should be upheld as a valid exercise of the rule making power of the State Board of Elections.

If this Court is permitted to follow the plain intent and meaning of the language employed by the Legislature in providing for the creation of new political parties, it must necessarily hold that G. S., 163-1, confers upon any qualified voter the legal right to sign a petition for the creation of a new political party irrespective of whether such voter has participated in the primary election of an existing political party during the year in which the petition is signed, and that Regulations Nos. 2 and 4 of the State Board of Elections are invalid in so far as they undertake to establish and enforce the rule that a qualified voter is ineligible to join in a petition for the creation of a new political party during a year in which he has voted in the primary election of an existing political party. The respondents assert, however, that this Court is not at liberty to give to G. S., 163-1, its seeming meaning because the statute is modified by the laws relative to primary elections set forth in sub-chapter II of Chapter 163 of the General Statutes. The respondents do not point out any specific provisions of the primary laws expressly modifying the apparent import of G. S., 163-1, in respect to the qualifications of signers of petitions for the creation of new parties. But they insist that the primary laws imply that a qualified voter is barred from signing such a petition during any year in which he has voted in the primary election of an existing political party because "the law does not intend to provide for the same voter the right to participate in the nomination of two or more sets of candidates who participate in the same election, by having their names officially placed upon the ballot."

We cannot agree with this contention. A painstaking study reveals that there is nothing explicit or implicit in the primary laws modifying the plain meaning of the unambiguous words of G. S., 163-1, conferring upon any qualified voter the legal right to sign a petition for the creation of a new political party without regard to whether he has or has not voted in the primary election of an existing party during the year in which such petition is signed and filed.

The primary laws have no application to new political parties created by petition under G. S., 163-1. By express legislative declaration, such laws apply only to existing political parties "which, at the last preceding general election, polled at least three per cent of the total vote cast therein for" governor, or for presidential electors. G. S., 163-144. The law permits a new political party created by statutory petition to select

its candidates in its own way, and merely requires it to furnish "to the state board of elections the names of such of its nominees as is desired to be printed on the official ballots by the first day of September prior to the election." G. S., 163-1.

Nevertheless, the respondents maintain that the primary laws impose upon qualified voters participating in primary elections of existing parties a moral and legal obligation to the party in whose primary they vote disabling them to sign a statutory petition for the creation of a new political party during the year in which such primary election is held. As we are not the arbiters of the political morals of electors, we are not concerned here with any moral obligations which participation in the primary election of an existing political party may put upon voters with respect to such existing political party in the future. As expounders of the law, however, it is our duty to decide whether participation in the primary election of an existing political party legally disables a qualified elector to sign a petition for the creation of a new political party during the year in which such primary election is conducted.

The manifest purposes of the primary system set up by our laws is to secure to the members of an existing political party freedom of choice of candidates, and to confine the right of qualified electors to vote in party primaries to the primary of the existing political party of which they are members at the time of the holding of such primary. The law does attempt to place upon a candidate who seeks nomination to public office in the primary election of an existing political party an obligation to adhere to such existing political party for at least a limited time in the future by exacting of him a pledge "to abide by the results of said primary, and to support in the next general election all candidates nominated," by such existing political party. G. S., 163-119.

We are concerned here, however, with voters rather than with candidates and must consider the provisions of the primary laws relating to the former. These laws secure to the member of an existing political party freedom of choice of candidates by providing that he may vote for candidates for all or any of the offices printed on the ballots of the political party with which he affiliates "as he shall elect and that he shall disclose the name of the political party printed thereon and no more." G. S., 163-126.

No person is "entitled to participate or vote in the primary election of any political party unless he . . . has first declared and had recorded on the registration book that he affiliates with the political party in whose primary he proposes to vote, and is in good faith a member thereof, meaning that he intends to affiliate with the political party in whose primary he proposes to vote and is in good faith a member thereof." G. S., 163-123. When an elector undertakes to vote at a

primary election, "he shall declare the political party with which he affiliates and in whose primary he desires to vote . . ., and he shall then be furnished by the registrar ballots, as desired by him, of the political party with which he affiliates, which he may vote, and he shall not in such primary be allowed to vote a ticket marked with the name of any political party of which he has not declared himself to be a member." G. S., 163-126. Moreover, "any one may at any time any elector proposes to vote challenge his right to vote in the primary of any party upon the ground that he does not affiliate with such party or does not in good faith intend to support the candidates nominated in the primary of such party, and it shall be the duty of the registrar and judges of election upon such challenge to determine whether or not the elector has a right to vote in said primary." G. S., 163-126.

Manifestly, the laws regulating primary elections are admirably adapted to accomplish the objects they were enacted to achieve. These laws guarantee to the member of an existing political party freedom of choice of candidates. Likewise, they confine the right of a qualified elector to vote in party primaries to the primary of the existing political party with which he affiliates *at the time of the holding of the primary.* But they do not undertake to deprive the voter of complete liberty of conscience or conduct in the future in the event he rightly or wrongly comes to the conclusion subsequent to the primary that it is no longer desirable for him to support the candidates of the party in whose primary he has voted. Besides, the Legislature has expressly declared that nothing contained in the laws governing primary elections "shall be construed to prevent any elector from casting at the general election a free and untrammeled ballot for the candidate or candidates of his choice." G. S., 163-126. It inevitably follows that Regulations Nos. 2 and 4 of the State Board of Elections conflict with the pertinent statutes and are void by reason thereof in so far as they attempt to set up and establish a rule that voting in the primary election of an existing political party disables qualified electors to sign a petition for the creation of a new political party during the year in which such primary election is held.

The respondents say, however, that Regulations Nos. 2 and 4 must be sustained as a proper exercise of the rule making power of the State Board of Elections even if an elector is not disqualified to sign a petition under G. S., 163-1, by voting in the primary election of an existing political party during the year in which the petition is signed. They repeat their assertion that these regulations are not intended to add anything to the statutory requirements relating to the petition for the creation of a new party, that they are merely designed to establish an expeditious procedure for determining whether the petition has been

signed by at least 10,000 registered voters, and are reasonably adapted to secure that end. But this argument is subject to a fatal defect. It is based upon the fallacy that the regulations require the chairman of the county board of elections in a county in which signatures to the petition are obtained to certify to the State Board of Elections the names of all signers of the petition in his county who are registered voters. Such meaning cannot be found in the language of the regulations. The chairman of a county board of elections in a county in which signatures to the petition are obtained is permitted to certify to the State Board of Elections the information appearing on the registration and poll books of his county with reference to the names of the electors in his county who sign the petition only in case such electors meet both requirements prescribed by the regulations, namely: (1) Registration; and (2) Non-participation in the primary election of any existing political party during the year in which the petition is signed.

The Court is not at liberty to remodel Regulations Nos. 2 and 4 under the guise of construction by making idle and nugatory the part of its language precluding the certification of registered voters participating in the primary election of an existing political party during the year in which the petition is signed. In the interpretation of a regulation, the adopting agency must be presumed to have inserted every part of the regulation for a purpose, and to have intended that every part of the regulation should be carried into effect. 42 Am. Jur., Public Administrative Law, section 101; 50 Am. Jur., Statutes, section 358.

Hence, we are constrained to hold that Regulations Nos. 2 and 4 are invalid in any event in that they are not reasonably adapted to enable the State Board of Elections to determine the registration or non-registration of the signers of petitions for the creation of new political parties.

Nothing here stated, however, is to be construed to intimate any opinion that the State Board of Elections is without authority to make rules and regulations requiring petitioners for the creation of a new political party to procure at their own expense and present to the Board for consideration as evidence in determining whether the sufficiency of the statutory petition has been established certificates from election officers concerning the mere registration or nonregistration of the signers.

The parties waived all questions as to the form of the action and procedural matters and agreed that the proceeding should be regarded as an application for a writ of *mandamus.* As it appeared beyond doubt at the hearing that the petition was signed by at least 10,000 qualified voters and otherwise met every requirement of G. S., 163-1, the court below properly ordered the State Board of Elections to perform its statutory duty to cause the names of the nominees of the States' Rights

Democratic Party for President and Vice-President to be printed on the official ballot for the general election scheduled for November 2, 1948. What was said in *Board of Education v. Comrs.*, 189 N. C., 650, 127 S. E., 692, is relevant here. "It is conceded, and we think properly so, that the duty of the county commissioners in considering the petition for the first election is not discretionary, but only ministerial, and that C. S., 5640, is mandatory. The board of county commissioners, under C. S., 5640, has the power to determine whether the petition complies with C. S., 5639 and 5640, but when it is admitted that the petition for the first election does comply with these requirements, they have no discretion to refuse to order the election."

The judgment of the Superior Court must be

Affirmed.

STACY, C. J., dissenting: The petitioners here seek, by writ of *certiorari,* to review, as upon appeal, the action of the State Board of Elections in denying to their nominees for President and Vice-President a place on the official ballot to be used in the general election on 2 November, 1948; and, by writ of *mandamus,* to compel the defendant to comply with the prayer of their petition.

The Board of Elections denied the privilege sought on the ground that the petitioners had not complied "with the law and rules and regulations adopted by the State Board of Elections" for all petitioners desiring to form a new political party and to have the names of its candidates placed on the official ballot. The petitioners freely concede that they have not complied with the rules and regulations promulgated by the Board, and assert that they are under no obligation to do so.

The trial court held that the State Board of Elections was authorized by law to adopt reasonable rules and regulations for the conduct of primaries and elections, struck down two of its regulatory requirements as unreasonable and, without further inquiry, ordered that the writ of *mandamus* issue according to the prayer of the petition.

It is provided by G. S., 163-1, that any group of voters may organize a new state political party by filing with the State Board of Elections, "at least ninety days before a general state election, a petition signed by ten thousand qualified voters, declaring their intention of organizing a state political party, . . . and also declaring their intention of participating in the next succeeding election." The State Board of Elections— the agency charged with responsibility in the matter and clothed with authority to adopt reasonable rules and regulations for the conduct of primaries and elections (G. S., 163-10; 163-183)—promulgated certain rules and regulations requiring, *inter alia,* that such petitions be accompanied by certificates from the chairman of the county boards of elec-

STATES' RIGHTS DEMOCRATIC PARTY *v.* BOARD OF ELECTIONS.

tions, certifying (1) that the names of the voters appearing on the petition from their respective counties were duly qualified voters and registered on the general election registration books in the precincts indicated on the petition; and (2) that none of the electors who signed the petition "voted in the primary election of any political party during the year in which the petition is filed."

At the last moment, on 3 August, 1948, the petitioners filed with the State Board of Elections a number of petitions bearing more than 18,000 names, which were unaccompanied by any certificates to show that the signers were qualified voters.

What was the State Board of Elections to do with these petitions? Obviously the petitioners had failed to make manifest their right to the privilege sought. *Ingle v. Board of Elections,* 226 N. C., 454, 38 S. E. (2d), 566. After due consideration, the petitions were denied.

Thereafter, the petitioners asked the State Board of Elections to assist them in ascertaining from the county chairmen whether the petitions contained the names of the requisite number of qualified voters—without reference to whether they voted in the primary election of any political party during the current year—and stated in their request "that it will be understood that the action of the State Board in transmitting the petitions to the respective counties, as herein requested, will be without prejudice to any legal rights of the State Board of Elections with respect to the position which it has taken or may take in connection with these matters, and will not be considered as any waiver of any rules and regulations adopted by your Board or any action heretofore taken by your Board."

Why make this request and why show to the Superior Court the number of qualified voters on the petitions—unless regarded as necessary and reasonable—when no such showing had been made before the State Board of Elections? *Certiorari* is supposed to bring up the record as it appeared before the hearing body. Furthermore, *mandamus* lies only to enforce a present, clear legal right. "It confers no new authority. The party seeking the writ must have a clear legal right to demand it, and the party to be coerced must be under a legal obligation to perform the act sought to be enforced." *Person v. Doughton,* 186 N. C., 723, 120 S. E., 481; *Hayes v. Benton,* 193 N. C., 379, 137 S. E., 169. Had the matter been heard in the Superior Court on the record as it appeared before the State Board of Elections undoubtedly the results would have been the same rather than opposite. Notwithstanding the alleged unreasonableness of the rule, when the petitioners came to make out their case in court they offered the identical proof which the rule requires.

It is specious reasoning to say that the State Board of Elections must either deny the sufficiency of the petitions or else accept them at their

face value.  No such obligation rests upon the Board.  It is not a giver of gifts, but a protector of rights, and those who claim rights before it must establish them.  There is nothing unreasonable in this requirement. How else could the Board proceed with assurance or safety?  The General Assembly did not intend to open wide the door with no supervision or protection of any kind.  Yet, this is the effect of today's decision. The terms under which the delayed proof was secured appear in the record, and conjure with them as we may, the fact remains that on the showing before the State Board of Elections no case for *mandamus* is made out.  Take away this subsequent proof, which comes too late and was never before the Board, and what have we?  It is no solution to strike down the rules.  This leads to greater embarrassment.  See *Britt v. Board of Canvassers,* 172 N. C., 797, 90 S. E., 1005; *Johnston v. Board of Elections,* 172 N. C., 162, 90 S. E., 143.  The burden was on the petitioners to establish their right before the State Board of Elections.  *Umstead v. Board of Elections,* 192 N. C., 139, 134 S. E., 409. They contented themselves by simply filing their unsupported petitions at a late hour on the last day.

It is further nominated in the regulation of the State Board of Elections that a petition to create a new political party must be signed by the requisite number of qualified voters, "none of whom voted in the primary election of any political party during the year in which the petition is filed."

No effort was made to comply with this provision of the rule in the instant case, and it was held by the trial court to be unreasonable; hence properly disregarded.  The basis of the requirement is, that the law as it pertains to primaries, contemplates that no voter who participates in the primary of the political party with which he affiliates should be permitted to take part in the nomination of candidates of another and different party who are to be voted on in the same election.  G. S., 163-123; 163-126; *Rowland v. Board of Elections,* 184 N. C., 78, 113 S. E., 629; *Brown v. Costen,* 176 N. C., 63, 96 S. E., 659; 18 Am. Jur., 282.

It is provided by G. S., 163-183, that the State Board of Elections shall have general supervision over "the primaries and elections provided for herein . . . and in case where sufficient provision may not appear to have been made herein may make such regulations and provisions as it may deem necessary; Provided, none of the same shall be in conflict with any of the provisions of this article."  Thus the Board is supported by ample statutory authority for the regulation in question. *Burgin v. Board of Elections,* 214 N. C., 140, 198 S. E., 592; 18 Am. Jur., 290.

The claim of unreasonableness in respect of this requirement is predicated on the provisions of G. S., 163-1, without reference to other cognate provisions of the primary and election laws. Even if this position be sound, which the respondent does not concede, the requirement in respect of accompanying the petitions with certificates from the chairmen of the county boards of elections would still stand and quite suffice to render the present proceeding inapposite.

The court below held that the State Board of Elections was authorized to make reasonable rules and regulations and its judgment in this respect is unchallenged. It is not enough to point out imperfections in the rules or how they might have been better. They are valid if reasonable and not in conflict with any statutory provision. Reasonableness is the test, not perfection nor even wisdom.

This general supervision over primaries and elections has been given to the Board with no right of appeal to the courts from its decisions. 18 Am. Jur., 273; 29 C. J. S., 178. For this reason, no doubt, the General Assembly fixed the time limit for filing the new political party petition at the short space of "ninety days before a general state election." Manifestly no court action was contemplated during this period, as the present proceeding clearly demonstrates. Nevertheless, the petitioners win their objective, not on the showing made before the State Board of Elections, but on the showing later made in court, and then only by disregarding one of the rules and belatedly complying with the other—thus making manifest its practicality and reasonableness. "The function of the writ (*mandamus*) is to compel performance of a ministerial duty—not to establish a legal right, but to enforce one which has been established. The right sought to be enforced must be clear and complete." *Wilkinson v. Board of Education,* 199 N. C., 669, 155 S. E., 562. "*Mandamus* lies only to compel a party to do that which it is his duty to do without it." *White v. Comrs. of Johnston,* 217 N. C., 329, 7 S. E. (2d), 825.

It is rarely, if ever, permissible to award a *mandamus* when it can be done only by annulling an unconstitutional Act of Assembly or by avoiding administrative rules of procedure. *Person v. Doughton, supra.* The writ is never appropriate to enforce a doubtful right. *Mears v. Board of Education,* 214 N. C., 89, 197 S. E., 752; *Barham v. Sawyer,* 201 N. C., 498, 160 S. E., 582. When did the right here asserted lose its opaqueness and become luminous? Certainly not while it was before the State Board of Elections where the petitioners were required to make it shine. Its clarity was not then apparent and to some it has not yet been made to appear. To hold that a later initial showing in court suffices on *mandamus* is to take over the functions of the Board and allow the petitioners another opportunity to establish their claim.

A similar situation in principle appeared in the case of *Barham v. Sawyer, supra,* where *mandamus* was denied.

It should be kept steadily in mind that no one's right to vote in the general election is challenged or at issue in this proceeding. It is freely conceded that every registered elector or qualified voter is at liberty to cast his ballot in the general election for the candidate of his choice, subject to the limitation in respect of candidates in primaries. Here, however, an alleged new political party is seeking to place its nominees for President and Vice-President on the official ballot in the forthcoming general election. Having been denied this privilege by the State Board of Elections—the agency charged with responsibility in the matter—for failure to comply "with the law and rules" applicable, the petitioners sue out a writ of *mandamus* to compel compliance. If the writ be apposite, then much of the writing on the subject in our Reports becomes apocrypha. The petitioners are not asking to have the State Board of Elections carry out one of its determinations, but to reverse a determination already made. "The writ (*mandamus*) issues to compel action—not to direct a reversal of action." *Pue v. Hood,* 222 N. C., 310, 22 S. E. (2d), 896. It may be stated as a general rule that where an official board is required to examine evidence, and form its judgment before it acts, and whenever this is to be done, it is not a case for *mandamus. United States v. Seaman,* 58 U. S., 226, 17 How., 225. The writ is available, not to establish a right, but to enforce a right already established.

My vote is to reverse the judgment and dismiss the proceeding.