### W. O. BURGIN v. NORTH CAROLINA STATE BOARD OF ELECTIONS ET AL.

(Filed 21 September, 1938.)

**1. Elections § 7—State Board of Elections is given supervision over primaries and elections and has duty to compel observance of election laws.**

The State Board of Elections has general supervision over the primaries and elections in the State, with authority to promulgate legally consistent rules and regulations for their conduct, and to compel the observance of the elections laws by county boards of elections, C. S., 5923, as amended by ch. 165, Public Laws of 1933, and the duty of the State Board to canvass the returns and declare the count, ch. 165, sec. 9, Public Laws of 1933, *does not* affect its supervisory power, which perforce must be exercised prior to the final acceptance of the returns made by the county boards.

**2. Same—**

The courts will not undertake to control the State Board of Elections in the exercise of its supervisory duties so long as such supervision conforms to the rudiments of fair play and the relevant statutes.

3. **Elections § 17—In this action to restrain certification of candidate by State Board of Elections, validity of particular challenged votes held not presented for determination.**

   In an action to restrain the State Board of Elections from certifying a candidate as the Democratic nominee for Congress in a congressional district, on the ground that the State Board was without authority to instruct certain county boards of elections in the district in regard to the validity of challenged ballots, findings of the trial court that a number of unregistered persons voted in one of the counties and that certain absentee ballots were erroneously counted, and that Republican electors participated in the primary therein, are irrelevant, such matters not being properly before the Court upon the challenge of authority of the State Board of Elections. *Rowland v. Board of Elections,* 184 N. C., 78, cited and distinguished.

4. **Elections § 16—Returns may not be impeached by chairman of county board who participated in meeting which passed upon and certified their correctness.**

   When a county board of elections makes amended returns in accordance with instructions of the State Board of Elections, which admittedly acted in good faith in issuing its instructions, and the amended returns are regular on their face, they may not be impeached by affidavit of the chairman of the county board who participated in the meeting which passed upon and certified to the correctness of the amended returns.

5. **Same—County boards must act on instructions from State Board of Elections as a body in a duly assembled legal session.**

   When the State Board of Elections instructs certain county boards of elections to amend their respective returns in accordance with the State Board's rulings on protests challenging the validity of certain ballots, it is necessary for the county boards to hear the challenges and make the amended returns acting as a body in a duly assembled legal session, and action taken and amended returns made by two members of the county board of each county, respectively, without notice to the third member, are void as a matter of law.

6. **Elections § 17—**

   A candidate is entitled to restrain the State Board of Elections from certifying his opposing candidate as the Democratic nominee until final returns have been received from all the county boards, each acting as a body in duly assembled legal session.

APPEAL by defendants from *Harris, J.,* at Chambers in Raleigh, 22 August, 1938. From WAKE.

Civil action to restrain the defendants from certifying C. B. Deane as the Democratic nominee for Congress in the Eighth Congressional District as a result of the run-off primary held on 2 July, 1938, and to require the defendants, by writ of *mandamus* and mandatory injunction, to declare the plaintiff the rightful Democratic nominee for said office as a result of the said primary election upon the basis of the lawful returns filed with the defendants.

The essential facts are these: W. O. Burgin and C. B. Deane were opposing candidates for the Democratic nomination for Congress in the Eighth Congressional District of North Carolina in the run-off primary of 2 July, 1938. Upon the face of the original returns made to the State Board of Elections by the several county boards of election comprising the district in question (twelve in number), the plaintiff, W. O. Burgin, received a majority of 75 votes over his opponent, C. B. Deane. After certification of the returns by the county boards as aforesaid, upon protests filed, recounts were ordered by the county boards of Davidson, Union, Montgomery and Richmond counties. As a result of these recounts and returns made thereon, the plaintiff's majority was increased to 135 votes—the total vote being: For Burgin, 19,285. For Deane, 19,144.

Thereafter, upon protest filed and demand made, hearings were held in Raleigh before the State Board of Elections with reference to the conduct of the said primary election in the four counties above named and the alleged invalidity and irregularity of certain ballots cast and counted or discarded in the said four counties. The State Board of Elections, by a majority vote, adopted separate resolutions, applicable to the counties named, and directed that the attention of the county board in each of the four counties be called to the resolution pertaining to said county.

## UNION COUNTY.

It appears that in Union County a number of congressional ballots were found in boxes other than the congressional box, which were discarded by the precinct officials and the county board of elections pursuant to the long-established custom in said county, and also to the published instructions sanctioned by the county board of elections.

In the resolution of the State Board of Elections addressed to this situation it was provided that "the returns of the Board of Elections of Union County . . . be returned to the Board of Elections of Union County with instructions that said board cause all congressional ballots deposited in boxes other than the congressional box (except the recorder's box in North Monroe Precinct No. 2) to be counted and to cause said ballots so counted to be included in the certification to this board by the Union County Board," etc.

Thereafter, on 8 August, 1938, the Union County Board of Elections met and amended its returns by including therein 41 ballots found in boxes other than the congressional box (exclusive of the recorder's box in North Monroe Precinct No. 2), which were ascertained to be divided 11 for the plaintiff and 30 for his opponent.

## MONTGOMERY COUNTY.

Protests were filed before the Montgomery County Board of Elections by candidate Deane challenging the validity of certain absentee ballots, and, as a result, 27 of said ballots were discarded as void and 53 were found to be valid. Both candidates, Burgin and Deane, appealed from this ruling to the State Board of Elections. The State Board sustained the county board in its ruling on the 53 ballots found to be valid, and reversed its ruling as to 25 of the 27 ballots found to be void. Upon such findings and conclusions of law, the State Board of Elections instructed the Montgomery County Board to amend its returns so as to show an additional 25 votes for candidate Burgin, which was accordingly done.

## RICHMOND COUNTY.

A protest was filed before the Richmond County Board of Elections by candidate Burgin challenging the validity of certain absentee ballots, and, as a result, 95 of said ballots were discarded as void. Candidate Deane appealed from a portion of this ruling to the State Board of Elections. The State Board sustained the appeal as to 14 of said ballots and directed the Richmond County Board of Elections to reform its returns so as to include 14 additional votes for candidate Deane.

Pursuant to the order of the State Board, two members of the Richmond County Board signed what purports to be amended returns giving candidate Deane 14 additional votes, but this was done without any meeting of the board and without the knowledge or consent of the third member.

## DAVIDSON COUNTY.

Protests were filed before the Davidson County Board of Elections by candidate Deane challenging the validity of certain votes, and, as a result, the returns were changed or corrected in several particulars. Not being satisfied with the disposition of his protests by the county board, candidate Deane appealed to the State Board of Elections. In his "case on appeal," and again at the hearing, new and additional challenges were made which had not been presented to or passed upon by the county board. As a result of the hearing before the State Board, the returns from the Davidson County Board were "rejected . . . and . . . returned to the Board of Elections of Davidson County for correction by eliminating therefrom fraudulent, illegal and void absentee votes"; and further, the county board was "directed forthwith to eliminate fraudulent and void ballots and to ascertain and certify the number of legal ballots cast," etc.

Conferences were held with two members of the Davidson County board who came to Raleigh and, under protest, certified that 162 ballots for Burgin and 6 ballots for Deane were voided "by order and direction of the State Board of Elections." This amendment to the returns, so signed and filed with the State Board of Elections, was not considered or passed upon by the entire membership of the county board, but was signed in the absence of and without notice to the third member of the board. No opportunity was given to the third member to consider the proposal or to present his views to the board, either in or out of meeting.

The amended returns from the four counties above mentioned, compiled and tabulated with the undisputed returns from the remaining eight counties in the district, show candidate Deane to have a majority of 23 votes. The State Board of Elections thereupon declared its intention so to certify the result; whereupon, the plaintiff instituted the present action.

The trial court being of opinion that the amended returns from Union, Richmond and Davidson counties were void as a matter of law, and that upon the basis of the legal and valid returns filed with the State Board of Elections, the plaintiff is entitled to be declared the Democratic nominee for Congress in the Eighth Congressional District of North Carolina, entered judgment accordingly, from which the defendants appeal, assigning error.

*W. F. Brinkley, H. R. Kyser, and J. C. B. Ehringhaus* for plaintiff, appellee.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach* for defendants, appellants.

*L. P. McLendon,* amicus curiæ.

STACY, C. J. It is provided by C. S., 5923, as amended by ch. 165, Public Laws 1933, that the State Board of Elections shall have "general supervision over the primaries and elections in the State," with authority to promulgate legally consistent rules and regulations for their conduct; and further: "It shall be the duty of the State Board of Elections: . . . To compel the observance, by election officers in the counties, of the requirements of the election laws, and the State Board of Elections shall have the right to act on complaints arising by petition or otherwise, on the failure or neglect of a county board of elections to comply with any part of the election laws pertaining to their duties thereunder."

The fact that after the returns are in, the State Board of Elections is to canvass the returns and "determine whom they ascertain and declare by the count" (1933, ch. 165, sec. 9) to be nominated or elected is not to

be construed as a denial or negation of its supervisory powers, which perforce are to be exercised prior to the final acceptance of the several returns. Nor will the courts undertake to control the State Board in the exercise of its duty of general supervision so long as such supervision conforms to the rudiments of fair play and the statutes on the subject. *Brown v. Costen,* 176 N. C., 63, 96 S. E., 659.

In the instant case, there is no charge of arbitrariness on the part of the State Board of Elections, only its authority is questioned. Indeed, it is found as a fact "that the State Board conducted said hearings and investigations in absolute good faith and with high purpose and that this has not been questioned by either the plaintiff or his attorneys."

What was said in *Rowland v. Board of Elections,* 184 N. C., 78, 113 S. E., 629, is not presently applicable, for there we were dealing with alleged disqualifications of electors on the ground of party affiliation, a matter at that time, and perhaps now, properly determinable by the local registrars and judges of election. C. S., 6031. At any rate, the original finding of the trial court that Republican electors participated in the primary in Richmond County is beside the point or *dehors* the inquiry. So, also, are his initial findings that a number of unregistered persons voted therein and that certain absentee ballots were erroneously counted. These matters were not properly before him. Furthermore, it will be observed that the authority of the State Board was not involved in the *Rowland case, supra,* and that the decision was rendered prior to the amendatory act of 1933.

With the power of general supervision residing in the State Board of Elections, here admittedly exercised in good faith, we fail to perceive wherein the amended returns from Union County can be declared void as a matter of law. *Bell v. Board of Elections,* 188 N. C., 311, 124 S. E., 311. They appear regular on their face, and they are impeached only by the affidavit of the chairman of the board who participated in the meeting, duly called and held for the purpose of passing upon the amended returns, and who certified to their correctness. As bearing upon this circumstance, it is recalled that jurors are not allowed to impeach their verdict, *Coxe v. Singleton,* 139 N. C., 361, 51 S. E., 1019, and the official return of a sheriff may not be overthrown by the oath of a single witness. *Comrs. v. Spencer,* 174 N. C., 36, 93 S. E., 435; McIntosh, N. C. Prac. & Proc., 851. There is error in the court's ruling in respect of these returns.

The amended returns from Montgomery County are not challenged, as they were favorable to the plaintiff.

Upon the facts appearing of record, to which no exception is taken, we agree with the trial court that the purported amendments to the returns from Richmond and Davidson counties are void as a matter of

law. They are not the result of action by the respective boards duly assembled for the purpose. *Britt v. Board of Canvassers,* 172 N. C., 797, 90 S. E., 1005. The decisions are generally to the effect that a governing body, *e.g.,* municipal council (19 R. C. L., 884) or board of county commissioners (7 R. C. L., 941), can only act as a body and when in legal session as such. *O'Neal v. Wake County,* 196 N. C., 184, 145 S. E., 28; *London v. Comrs.,* 193 N. C., 100, 136 S. E., 356; *Cotton Mills v. Comrs.,* 108 N. C., 678, 13 S. E., 271; *Rockingham County v. Luten Bridge Co.,* 35 F. (2d), 301. The same rule applies to an administrative agency when acting in a *quasi*-judicial capacity. Leastwise, a county board of elections may not change or amend its returns to the State Board without some official action on its part. *Bell v. Board of Elections, supra.*

Moreover, some of the challenges affecting the vote in Davidson County have not been presented to or heard by the Davidson County Board of Elections. This, likewise, might avoid the attempted amendment of the returns from that county, if due process is to be observed in such matters. *Morgan v. U. S.,* 82 Law Ed., 757; *Harrell v. Welstead,* 206 N. C., 817, 175 S. E., 283; *Markham v. Carver,* 188 N. C., 615, 125 S. E., 409.

Plaintiff is entitled to a stay until final returns have been received by the State Board of Elections from the county boards of Richmond and Davidson counties and to await the result of these returns. *Johnston v. Board of Elections,* 172 N. C., 162, 90 S. E., 143; *Swaringen v. Poplin,* 211 N. C., 700, 191 S. E., 746.

Error and remanded.