STRICKLAND *v.* HILL.

defendant's negligence and plaintiff's damage. The jury answered the first issue, "No." The court entered judgment dismissing the action. The plaintiff appealed.

*Wm. D. Lonon, Paul J. Story for plaintiff, appellant.*
*W. T. Joyner, Proctor & Dameron for defendant, appellee.*

―――――――――

H. PAUL STRICKLAND v. WOODROW HILL.

(Filed 19 October, 1960.)

1. **Elections § 14—**
   G.S. 163-86, by its express terms, applies to primaries as well as to general elections,

2. **Same: Elections § 6—**
   G.S. 163-143, to the extent of conflict therewith, was repealed or superseded by the provisions of the 1933 Act codified as G.S. 163-86.

3. **Same: Elections § 3— County Board of Elections has power to recount ballots upon suggestion of errors in tabulations prior to its canvass.**
   Where a candidate in a primary election, prior to the time fixed for the County Board of Elections to canvass the returns, suggests errors in tabulating ballots in certain precincts because persons not legally qualified acted as counters and tabulators, but makes no assertion that any person voted who was not entitled to vote or that any qualified elector was prevented from voting, and files a written request for recount, the County Board has authority, in the exercise of its judgment and discretion in good faith, to order and conduct a recount of the ballots cast and to certify the candidate having the majority of the votes as ascertained by such recount as the nominee of the party, notwithstanding that the returns of the precinct officials are regular upon their face. The opinion of the Court by *Bobbitt, J.,* bases this

conclusion on G.S. 163-86 as modifying or superseding G.S. 163-143 to the extent of any conflict. The concurring opinion of *Rodman*, J., concurred in by *Denny* and *Parker*, J. J., bases this power on G.S. 163-143.

**4. Elections § 3—**

A rule of the State Board of Elections which is in conflict with statute is void to the extent of such conflict.

RODMAN, J., concurring.

DENNY and PARKER, J. J., join in concurring opinion.

MOORE, J., dissenting.

WINBORNE, C. J., joins in the dissent.

APPEAL by petitioner from *McKinnon, J.*, August Civil Term, 1960, of WAKE.

This cause was heard by Judge McKinnon upon the petition of H. Paul Strickland for a judicial review, in accordance with G.S. 143-306 *et seq.*, of an order entered August 1, 1960, by the State Board of Elections.

On July 6, 1960, the Harnett County Board of Elections had certified to the Clerk of the Superior Court the name of Woodrow Hill as the nominee of the Democratic party for the office of Judge of the Recorder's Court of Dunn by virtue of the second primary election held Saturday, June 25, 1960. The hearing before the State Board was on petitioner's appeal from said decision and action of the County Board.

The State Board denied petitioner's said appeal. It based its decision upon the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

"1. That in the second primary election held in Harnett County on June 25, 1960, H. Paul Strickland, Petitioner, and Woodrow Hill, Respondent, were the two Democratic candidates for the office of Judge of Recorders Court of Dunn, North Carolina, in Averasboro Township, which township is composed of precincts number 1, number 2, number 3, and number 4.

."2. That at the County canvass made by the Harnett County Board of Elections on June 28, 1960, said canvass by the County Board of Elections for Judge of Recorders Court of Dunn showed that H. Paul Strickland received 1,174 votes and Woodrow Hill received 1,166 votes for said office, thereby giving H. Paul Strickland, Petitioner, a majority of eight votes, but that no certification was made as to the nomination of the Democratic

candidate for Judge of Recorders Court of Dunn at this meeting because the respondent Woodrow Hill had written a letter dated June 27, 1960, to the Chairman of the Harnett County Board of Elections, requesting a recount of the votes cast for Judge of Recorders Court, accompanied by an affidavit of Woodrow Hill, which affidavit is as follows:

" 'NORTH CAROLINA                            *AFFIDAVIT*
HARNETT COUNTY

WOODROW HILL, first being duly sworn, deposes and says that he was a candidate for the office of Judge of the Recorder's Court of Dunn in the second primary election which was held on June 25, 1960; that upon the closing of the polls in the four precincts of Averasboro Township — they being Averasboro Township Nos. 1, 2, 3, and 4; that the ballot boxes were immediately opened and counting and tabulation of the ballots were begun; that no one who assisted or aided in the counting and tabulation of the ballots were sworn as required by G.S. 163-84; that in all of the precincts there were counters and tabulators who were not electors of said precinct and that the ones who assisted in the counting and tabulation of the ballots in each of the precincts were not instructed on how differently marked ballots should be counted and tabulated, and that the counting of the ballots in Averasboro No. 4 in some instances were not made in the presence of the election officials of the said precincts as is required by G.S. 163-84 and that your affiant verily believes that if the counting and tabulation of the votes in the four precincts of Averasboro Township had been done in accordance with the law in such cases made and provided that the result would have been materially different and that your affiant would have been high man in said second primary election for the office of Judge of the Recorder's Court of Dunn; that your affiant on information and belief states that there were various other irregularities in all four of the said precincts in the counting and tabulation of the said votes of the said precincts which would materially change the result of the tabulation.

This the 27th day of June, 1960.

                                    /s/ WOODROW HILL
Subscribed and sworn to before me,
this 27th day of June, 1960.

                                    /s/ WOODROW H. MYERS
(SEAL)                                  Notary Public.
My Commission expires: December 16, 1960.'

"3. That the Harnett County Board of Elections at this meeting on June 28, 1960, took under consideration the affidavit and request of Woodrow Hill for a recount of the votes for Judge of Recorders Court in Averasboro Township and that the Harnett County Board, according to its minutes, 'reached the conclusion that there might be errors in counting the ballots by precinct officials and therefore decided to recount.' This decision was announced by the Chairman in the presence of both candidates Mr. H. Paul Strickland and Mr. Woodrow Hill, whereupon the Petitioner, H. Paul Strickland, protested and objected through his counsel to the granting of the request for a recount of the votes for Judge of the Recorders Court of Dunn in Averasboro Township upon the basis that the said County Board of Elections was without authority to grant such request upon the allegations contained in the affidavit of Woodrow Hill since they did not comply with the rules of the State Board of Elections relating to recounts and to the statutory provisions also relating thereto; that the County Board of Elections rejected the protest of the Petitioner H. Paul Strickland, whereupon the Petitioner H. Paul Strickland gave notice of appeal to the State Board of Elections. A recount was thereupon made by the County Board of Elections the same day of the votes cast in Averasboro Township for the Democratic nomination for Judge of Recorders Court of Dunn, N. C., which recount was made in the presence of both the petitioner and respondent and their attorneys, which recount resulted in the County Board finding that there were 1,172 ballots cast in said Averasboro Township for Woodrow Hill and 1,171 ballots cast for H. Paul Strickland, thereby giving Woodrow Hill a one-vote majority.

"4. That the petitioner H. Paul Strickland, after completion of the recount, requested the Board to count the ballots again and the Board recessed the meeting until Wednesday, June 29, 1960; that the County Board met on the next day, Wednesday, June 29, 1960, and decided to continue this proceeding until Wednesday, July 6, 1960, and notified both Mr. Strickland and Mr. Hill of its action; that on July 2, 1960, counsel for H. Paul Strickland, petitioner, wrote the Chairman of the Harnett County Board of Elections asking that they be given an opportunity to be heard by the Board and an affidavit and motion by Petitioner Strickland seeking a hearing on this matter was served on each of the three members of the Harnett County Board of Elections on the morning of July 6, 1960.

"5. That on July 6, 1960, the Harnett County Board of Elections met and again took under consideration Mr. Strickland's request that the Board recount the ballots again and denied the request and certified the respondent Woodrow Hill as the Democratic nominee by a majority of one vote for the office of Judge of Recorders Court of Dunn, North Carolina.

"6. That the State Board of Elections at its meeting on August 1, 1960, finds that the affidavit and letter filed by the respondent Woodrow Hill with the Harnett County Board of Elections demanding a recount of the votes cast in the second Democratic Primary in Averasboro Township did not comply with the rules and regulations of the State Board of Elections which were established by the State Board, as printed in the 1959 edition of the State Election Laws, in that the said affidavit of Woodrow Hill did not comply with the following Rule I of the State Board of Elections: 'If, after the canvass is completed by the County Board of Elections, any candidate or candidates, participating in such primary or election, demands a recount by the County Board of Elections in any one or more precincts in the county, and presents sufficient evidence by affidavit tending to show errors in the canvassing of said votes by the County Board of Elections, either because of an error in the tabulation thereof or because of the counting of alleged illegal ballots, in an amount alleged to be sufficient to change the results of the nomination or election of such candidate or candidates, then this demand for the recount must be made to the chairman or secretary of the County Board of Elections, in writing, by 6 o'clock P.M. on or before the second day following the completion of the original count by said County Board and the declaration by it of the results of said primary or election. The County Board of Elections shall thereupon, within the time prescribed, meet to consider this demand for a recount.'

"7. That the appeal of petitioner H. Paul Strickland from the decision of the Harnett County Board of Elections to the State Board of Elections was filed in proper time with the State Board of Elections, which appeal asked the State Board of Elections to order the Harnett County Board of Elections to rescind its action in recounting the votes cast in the second Democratic primary election for Judge of Recorders Court in Averasboro Township and to order the said Harnett County Board of Elections to certify the petitioner H. Paul Strickland as the Democratic nominee for the office from the official precinct returns sent in

by the precinct officials in the four precincts in Averasboro Township."

## CONCLUSIONS OF LAW

"The State Board of Elections, after consultation with T. Wade Bruton, Attorney General, finds as its Conclusions of Law in this case as follows:

"That it is doubtful that the State Board of Elections has the authority to order the Harnett County Board of Elections to rescind its action in recounting said ballots in the Democratic primary for Judge of Recorders Court of Dunn in Averasboro Township in the Second Democratic Primary held on June 25, 1960, and is probably without legal authority to order the said county board of elections to certify the petitioner H. Paul Strickland as the Democratic Nominee for said office."

At the conclusion of the hearing in superior court, judgment was entered which, in pertinent part, provides:

"Upon a review of the record, argument of Counsel, consideration of the law and of the rules of the State Board of Elections and stipulations by Counsel at said hearing, the Court makes the following findings:

"That no exceptions have been taken to the Findings of Fact of the State Board of Elections but only to the Conclusions of Law thereon, and this Court, being of the opinion that paragraph 6 of the Findings of Fact is based on an erroneous interpretation of the law applicable to the facts and is itself a Conclusion of Law, and that it and the Conclusion of Law set forth by the State Board of Elections should be set aside and modified; upon the facts found by the State Board of Elections and the undisputed facts in the record and the stipulations of Counsel, the Court makes the following conclusions of law:

"(1) That there had been no canvass and judicial determination of the results of the voting within the meaning of G.S. 163-86, at the time of the consideration by the Harnett County Board of Elections on June 28, 1960, of the demand for recount and affidavit of the respondent Woodrow Hill; and the actions of said Board in considering such demand and affidavit and in proceeding to recount the votes cast in Averasboro Township for the Democratic nomination for Judge of the Dunn Recorder's Court, and thereafter, in certifying as a result of such recount

that the respondent Woodrow Hill was the Democratic nominee, were within the lawful powers of the Harnett County Board of Elections, particularly the powers conferred by G.S. 163-86 and G.S. 163-143, and are hereby affirmed.

"(2) That the order dismissing the appeal of H. Paul Strickland is affirmed.

"(3) That the petitioner is not entitled in this proceeding and upon the facts found and conclusions of law thereon to the writ of mandamus prayed.

"(4) That no substantial right of the petitioner H. Paul Strickland has been denied by the recount made by the Harnett County Board of Elections.

"IT IS ORDERED, ADJUDGED AND DECREED from Findings of Fact, Conclusions of Law and Stipulations, that the appeal of the petitioner H. Paul Strickland is hereby denied."

Petitioner excepted and objected to the conclusions of law therein made and to the signing and entry of said judgment and appealed.

*Levinson & Levinson for petitioner, appellant.*
*W. A. Taylor and J. W. Hoyle for respondent, appellee.*

BOBBITT, J. Presumably, the returns by the registrar and judges of each precinct to the County Board were made in the manner prescribed by statute (G.S. 163-85; G.S. 163-84, as amended by Chapter 891, Session Laws of 1955), and nothing on the face thereof indicated irregularity in the counting of ballots or in the tabulation of the votes cast for the respective candidates.

Petitioner, relying upon G.S. 163-143 and *Brown v. Costen,* 176 N.C. 63, 96 S.E. 659, and on a rule promulgated by the State Board of Elections, contended the County Board should declare and certify petitioner as the Democratic nominee on the basis of the returns of the precinct officials. The County Board refused to declare the result of the election on the basis of these returns. Instead, over petitioner's protest, it ordered a recount of the ballots in each of the four boxes; and, upon such recount, it determined that 1,172 votes had been cast for Hill and 1,171 for Strickland and thereupon declared and certified Hill as the Democratic nominee.

No question is presented as to the manner in which the recount was conducted or as to the accuracy thereof. Petitioner's contention is that the County Board had no authority to order and conduct such recount; that the recount so ordered and conducted by the

County Board has no legal significance; and that the County Board should be required to declare petitioner the successful candidate on the basis of the returns made by the precinct officials.

In view of the authority conferred upon the State Board of Elections by G.S. 163-10(10) and G.S. 163-183, petitioner appealed to the State Board. We pass, without decision, whether the State Board had authority, assuming petitioner was entitled thereto, to grant the relief sought, to wit, an order rescinding the decision and action of the County Board and directing the County Board to declare and certify petitioner as the Democratic nominee. Under the circumstances, we deem it appropriate to consider the merits of petitioner's alleged grievance.

In 1915, the General Assembly enacted a comprehensive statute providing for primary elections throughout the State. Public Laws of 1915, Chapter 101. The provisions of the 1915 Act, as amended, are now codified as G.S. 163-117 through G.S. 163-147, constituting Article 19, Subchapter II, of Chapter 163.

Section 27 of the 1915 Act (now codified as G.S. 163-143) provided: "That when, on account of errors in tabulating returns and filling out blanks, the result of an election in any one or more precincts cannot be accurately known, the county board of elections and the State Board of Elections shall be allowed access to the ballot boxes in such precincts to make a recount and declare the results which shall be done under such rules as the State Board of Elections shall establish to protect the integrity of the election and the rights of the voters."

Section 3 of the 1915 Act, now codified as G.S. 163-118, in pertinent part, provided: "That said primary elections shall be conducted, as far as practicable, in all things and in all details in accordance with the general election laws of this State, unless otherwise provided by this act, . . ."

In *Brown v. Costen, supra,* the plaintiff, a candidate for the Democratic nomination for the office of sheriff, sought to restrain the county board of elections from certifying his opponent as the Democratic nominee on the basis of the returns of the precinct officials on the ground said officials "had wrongfully and willfully refused to receive the votes of a good number of qualified voters, and whose purpose was to vote for plaintiff as the Democratic nominee." It is noted that the plaintiff alleged, *inter alia,* "that at the close of the election, the votes having been correctly tabulated were duly certified to the county board of elections, etc." After pointing out the insufficiency of plaintiff's allegations and affidavits, *Hoke, J*

(later *C. J.*), proceeded to consider at length the provisions of. the 1915 Act. With reference to the 1915 Act, the precise question .was whether, assuming the sufficiency of plaintiff's allegations and affidavits, a court of equity would intervene to review the decision of the registrar and .judges of election as to whether the applicants were properly rejected on account of failure to affiliate with the Democratic party in the manner prescribed .by statute.

Near the end of the opinion in *Brown v. Costen, supra, Hoke, J.* (later *C. J.*), said:

"The ballots having been deposited in boxes prepared for the purpose, under the supervision and rulings of the registrar and judges at the different voting precincts, the law requires these officials at the close of the primary to count the same and certify a correct return of the vote to the county and State boards of elections, respectively, this according to the nature of the offices, and these boards are directed to tabulate and publish the results, which results when published shall ascertain and determine the regular party candidate. The only provision of the law which authorizes or permits an examination or correction of these returns appears in section 27 of the act as follows:

" 'That when, on account of errors in tabulating returns and filling out blanks, the result of an election in any one or more precincts cannot be accurately known, the county board of elections and the State board of elections shall be allowed access to the ballot boxes in such precincts to make a recount and declare the results, which shall be done under such rules as the State board of elections shall establish to protect the integrity of the election and the rights of the voters.'

"A power, it will be noted, that arises to these boards only 'when, on account of errors in tabulating returns or filling out blanks,' the result of the election cannot be accurately known, and confers no authority on the courts, assuredly, to investigate and pass upon the methods or manner in which the primary may have been conducted.

"The suggestion that the act incorporates certain provisions of the general election law which might affect the interpretation is without significance, for in all cases where this occurs the statute itself contains provision that the reference shall only prevail when not inconsistent with the terms of the primary law, the controlling provisions of which are as heretofore shown."

The first and second quoted paragraphs are stressed by petitioner.

It is noted that *Brown v. Costen, supra,* was decided at Fall Term, 1918.

Section 2694 of the Code of 1883, a provision of the general election laws, provided: "The board of county canvassers shall, at their said meeting, in the presence of the sheriff and of such electors as choose to attend, open and canvass and judicially determine the returns, and make abstracts, stating the number of legal ballots cast in each precinct for each office, the name of each person voted for, and the number of votes given to each person for each different office, and shall sign the same." Based thereon, it was held: "Power is thus conferred to 'canvass and judicially determine the returns'— that is, to examine, scrutinize and enquire about them— to ascertain and declare that what purports to be such returns are or are not such, whether they are defective, if at all, and what their meaning is, and from such as are accepted as true and proper ones, what number of votes was cast, for whom they were cast, and the result of the election in the county, as prescribed by the statute. Power, however, is not thus conferred to make, alter or amend returns. The board must accept and act upon them, if they are sufficient, as they come from the judges of the election at the voting places. It is the province of this board to ascertain the results of the election in the county from the returns and only from them, and to declare and proclaim that result." *Gatling v. Boone* (1887), 98 N.C. 573, citing decisions based on earlier provisions of the general election laws.

In 1901, the General Assembly enacted a comprehensive statute defining the general election laws. Public Laws of 1901, Chapter 89. Section 33 of the 1901 Act, codified as Section 4350 of the Revisal of 1905, and later as C.S. 5986, provided: "The Board of County Canvassers at their said meeting, in the presence of such electors as choose to attend, shall open and canvass and judicially determine the returns, stating the number of legal ballots cast in each precinct for each officer, the name of each person voted for, and the number of votes given to each person for each different office, and shall sign the same. *The said board shall have power and authority to judicially pass upon all facts relative to the election, and judicially determine and declare the result of the same. And they shall also have power and authority to send for papers and persons and examine the same.*" (Our italics.)

Referring to Revisal, Section 4350, *Allen, J.,* in *Britt v. Board of County Canvassers,* 172 N.C. 797, 90 S.E. 1005, states: "This sec-

tion clearly vests the board with discretionary power and imposes the duty of exercising its judgment, . . ."

In *Bell v. Board of Elections* (1924), 188 N.C. 311, 124 S.E. 311, involving a primary election, *Adams, J.*, called attention to the distinction between the statutes applicable to general elections and those applicable to primaries, stating: "In the primary there is no election to public office, the right to which may be put in issue and determined by *quo warranto*, and no provision for a board of canvassers clothed with power judicially to determine the precinct returns."

Thereafter, C.S. 5986 was amended by Section 8, Chapter 165, Public Laws of 1933, so as to read as follows: "*The County Board of Elections* at their said meeting required to be held on the second day *after every primary or election,* in the presence of such electors as choose to attend, shall open the returns and canvass and judicially determine the results of the voting in the respective counties, stating the number of legal ballots cast in each precinct for each candidate, the name of each person voted for and the political party with which he affiliated, and the number of votes given to each person for each different office, and shall sign the same. *The said County Board of Elections shall have the power and authority to judicially pass upon all facts relative to the election, and judicially determine and declare the result of the same. And they shall have power and authority to send for papers and persons and examine the same, and to pass upon the legality of any disputed ballots transmitted to them by any precinct officer.*" (Our italics.) This provision of the 1933 Act, now codified as G.S. 163-86, in express terms, applies to primaries as well as to general elections.

In a later case, *Ledwell v. Proctor* (1942), 221 N.C. 161, 19 S.E. 2d 234, C.S. 5986, as amended by the 1933 Act, was considered with reference to a general municipal election. In opinion by *Barnhill, J.* (later *C. J.*), it is stated: "The returns made by the registrars and judges of election merely constitute a preliminary step and such returns alone do not entitle the apparently successful candidate to the office. While the declaration of the board of elections of the result of an election as judicially determined and the certificate issued thereon are not conclusive, they must be taken as *prima facie* correct." It is here noted that the Harnett County Board of Elections judicially determined and certified Hill as the Democratic nominee.

In view of the foregoing, we reach the conclusion that G.S. 163-143, to the extent of conflict therewith, was repealed or superseded by the provision of the 1933 Act now codified as G.S. 163-86. See

*Board of Education v. Comrs. of Onslow*, 240 N.C. 118, 81 S.E. 2d 256.

There remains for consideration whether the County Board acted within the authority conferred by this portion of G.S. 163-86: "The said county board of elections shall have the power and authority to judicially pass upon all facts relative to the election, and judicially determine and declare the result of the same. And they shall have power and authority to send for papers and persons and examine the same, and to pass upon the legality of any disputed ballots transmitted to them by any precinct officer."

Petitioner asserts the affidavit of Hill, quoted in Finding of Fact #2, did not meet the requirements of the rule adopted by the State Board and quoted in Finding of Fact #6. As to this, the opinions of the State Board and of Judge McKinnon were in conflict. In our view, neither the validity of the rule nor the sufficiency of Hill's affidavit thereunder need be considered on this appeal.

Under the rule, when sufficient evidence is presented, in apt time, by affidavit "tending to show errors in the canvassing of said votes by the County Board of Elections, either because of an error in the tabulation thereof or because of the counting of alleged illegal ballots, in an amount alleged to be sufficient to change the results of the nomination or election," the county board "*shall* thereupon, within the time prescribed, meet *to consider* this demand for a recount." (Our italics.) The rule does not purport to provide that the county board *may not* meet and consider a demand for a recount in the absence of an affidavit in compliance therewith.

The gist of Hill's affidavit is that persons who were not legally qualified to do so acted as counters and tabulators in each of four precincts and that the returns made by precinct officials were based on the count and tabulation so made. The County Board, in the exercise of its judgment and discretion, "reached the conclusion that there might be errors in counting the ballots by precinct officials and therefore decided to recount." Petitioner expressly concedes the members of the County Board acted in good faith.

It is noted: If the said rule were interpreted so as to conflict with the powers conferred upon the County Board by G.S. 163-86, to the extent of such conflict the rule would be invalid. *States' Rights Democratic Party v. Board of Elections*, 229 N.C. 179, 186, 49 S.E. 2d 379.

True, the fact that persons not legally qualified to do so acted as counters and tabulators as set forth in Hill's affidavit would not invalidate the vote of any qualified elector. *Woodall v. Highway Commission*, 176 N.C. 377, 97 S.E. 226; *McPherson v. Burlington*, 249

N.C. 569, 107 S.E. 2d 147, and cases cited. However, there is no contention here that any person voted who was not entitled to vote or that any qualified elector was prevented from voting. The question is whether the affidavit alleging irregularities in connection with the counting and tabulation of the votes constituted a sufficient basis for the County Board, in the exercise of its judgment and discretion, to order and conduct a recount of the ballots cast.

Under the circumstances here considered, we are of opinion, and so hold, that the County Board, under G.S. 163-86, in the good faith exercise of its judgment and discretion, had authority to order and conduct a recount of the ballots and to declare and certify Hill as the Democratic nominee in accordance with such recount.

It is noted: It is the duty and responsibility of the precinct officials to put all ballots counted back into the box, to lock and seal the box; and thereafter the ballot box "shall remain in the safe custody of the registrar subject to any orders from the chairman of the county board of elections as to (its) disposition." Chapter 1203, Section 2, Session Laws of 1959. There is no suggestion that the precinct officials did not comply fully with their duties in these respects.

For the reasons stated, the judgment of Judge McKinnon is affirmed.

Affirmed.

RODMAN, J., Concurring: This case presents no question of a denial of the right to vote nor is there suggestion that illegal ballots were cast. The sole question for determination is the power of a County Board of Elections, upon suggestion of error in tabulating the vote at a primary election, to order a recount of the ballots before the canvass has been completed.

I think this power expressly given by statute, G.S. 163-143, which provides: "When, on account of errors in tabulating returns and filling out blanks, the result of an election in any one or more precincts cannot be accurately known, the county board of elections and the State Board of Elections shall be allowed access to the ballot boxes in such precincts to make a recount and declare the results, which shall be done under such rules as the State Board of Elections shall establish to protect the integrity of the election and the rights of the voters." This was a part of the original Act providing for primary elections. I find no statute limiting the power given, nor have I found any decision which in my opinion limits the power expressly conferred. To the contrary, prior decisions, when interpreted in the light of the questions which the court was called upon

to answer, seem to me to clearly recognize the right of a County Board to order a recount in primary elections to ascertain if an error was made in tabulating the vote. In *Brown v. Costen*, 176 N.C. 63, 96 S.E. 659, plaintiff, seeking to restrain the certification of his opponent, expressly alleged a correct tabulation of the ballots actually cast. He based his right to relief on the assertion that a number of qualified voters sufficient to affect the result had been denied the right to vote. Justice Hoke, in denying plaintiff's right to challenge and the power of the County Board to change the result because of an asserted denial of the right to vote, was careful to direct attention to the statute which gave to the County Boards the right to determine the accuracy of the tabulation. That is what the Harnett County Board did and all it did.

The conclusion reached in *Burgin v. Board of Elections*, 214 N.C. 140, 198 S.E. 592, with respect to the recount of the Union County ballots, I think supports the view here expressed.

I do not think we are now called upon to determine what additional power may have been given County Boards by subsequent legislation.

The right of County Boards to ascertain if error of tabulation exists must, by the terms of the statute, be exercised in conformity with rules promulgated by the State Board. The applicable rule reads:

"When any controversy shall arise with respect to the counting of the ballots, or the certification of the returns of the vote, in any primary or general election, in any precinct or precincts, any candidate or elector desiring to make any complaint or protest regarding same shall make such protest in writing to the County Board of Elections on or before the time fixed by the statutes for the canvassing of the votes for such primary or general election by the County Board of Elections, and said County Board of Elections may determine the controversy at said meeting or at any time hereinafter specified.

"If, after the canvass is completed by the County Board of Elections, any candidate or candidates, participating in such primary or election, demands a recount by the County Board of Elections in any one or more precincts in the county, and presents sufficient evidence by affidavit tending to show errors in the canvassing of said votes by the County Board of Elections, either because of an error in the tabulation thereof or because of the counting of alleged illegal ballots, in an amount alleged to be sufficient to change the results of the nomination or election of such candidate or candidates, then this demand for the recount must be made to the chairman

or secretary of the County Board of Elections, in writing, by 6 o'clock p.m. on or before the second day following the completion of the original count by said County Board and the declaration by it of the results of said primary or election. The County Board of Elections shall thereupon, within the time prescribed, meet to consider this demand for a recount."

Hill asserted errors in tabulating ballots and filed a written request for a recount with the County Board before the time fixed for the Board to canvass the returns. And the County Board, before canvassing the vote, considered the affidavit asserting errors of tabulation and "reached the conclusion that there might be errors in counting the ballots by precinct officials and therefore decided to recount." This decision was announced by the chairman in the presence of both candidates.

The quoted rule draws an appropriate distinction between a recount which may be ordered before and after the canvass is completed. In acting before the canvass was completed, the County Board was, by the first paragraph of the rule, authorized to recount. In so acting it was complying with its statutory duty "to protect the integrity of the election and the rights of the voters."

For these reasons my vote is to affirm.

DENNY and PARKER, J. J., join in concurring opinion.

MOORE, J., Dissenting. I do not agree that G.S. 163-86 (P.L. 1933, C. 165, s. 8) in any wise repealed or abrogated any of the provisions of G.S. 163-143 (P.L. 1915, C. 101, s. 27). The 1933 enactment restated the existing law (P.L. 1901, C. 89, s. 33) with only two material changes: (1) the county board of elections was substituted for the board of county canvassers, and (2) the board was given authority "to pass upon the legality of any disputed ballots transmitted to them by any precinct officer."

*Ledwell v. Proctor*, 221 N.C. 161, 19 S.E. 2d 234, cited by the majority opinion in support of the proposition that G.S. 163-143 has been repealed *pro tanto* by G.S. 163-86, does not involve a recount. It stands for the proposition that the declaration of the board of elections "must be taken as *prima facie* correct." But it further states: ". . . the declaration of the result and the issuance of a certificate by a board of elections is *prima facie* correct, it is not conclusive. Resort, in proper instance, may be had to the courts and the courts may examine and pass upon the correctness and sufficiency of the return and to settle and determine the true and law-

ful result of the election as it affects the rights of the parties before the court."

It is conceded that a county board of elections has judicial functions and may exercise broad discretion in canvassing election returns and declaring results of elections. This was just as true prior to our decision in *Brown v. Costen* (1918), 176 N.C. 63, 96 S.E. 659, as it is today. *Britt v. Board* (1916), 172 N.C. 797, 90 S.E. 1005. The 1933 enactment did not add one whit to the stature of the board as a judicial and discretionary body, save "to pass upon the legality of any disputed ballots transmitted to them by any precinct officer."

The minutes of the Harnett County Board of Elections show that, in ordering a recount, the Board acted solely upon the affidavit of Hill. This affidavit points out no "errors in tabulating returns and filling out blanks" such that the result of the election in any precinct could not be accurately known. It alleges no such errors. The existence of such errors must be alleged, or made to appear to the board, before a recount may be had. G.S. 163-143. *Brown v. Costen, supra,* at page 67.

A county board of elections does not have unlimited discretion. Its discretion does not supersede the law. The law applicable to the case at hand is G.S. 163-143, as interpreted by this Court in the *Brown* case. I am unwilling to recede from that interpretation.

The law amply provides for a correct, open and public count and tabulation of votes immediately upon the closing of the polls. G.S. 163-84 and 85. Ordinarily the first count is the more reliable count. The legislature has seen fit to limit recounts to those cases in which it is shown that errors have been made "in tabulating returns and filling out blanks."

The Harnett County Board of Elections was without authority to order a recount. In the absence of a proper showing to the Board by allegation and upon hearing that there were "errors in tabulating returns and filling out blanks," so that the result of the election in any one or more precincts could not be accurately known, Hill was not entitled to have the ballots recounted. The Board should have canvassed the votes without a recount and declared the results.

I vote to reverse the holding of the court below and remand the cause that an order be made directing the Election Board to canvass the returns and declare the results in accordance with the requirements of the pertinent rules and statutes as herein indicated.

WINBORNE, C. J., joins in this dissent.