ZENO H. PONDER v. WILLIAM JOSLIN, CHAIRMAN OF, WARREN R. WIL-
LIAMS, JOSEPH E. ZAYTOUN, HIRAM WARD AND C. BRUCE HAW-
KINS, MEMBERS OF THE NORTH CAROLINA STATE BOARD OF ELEC-
TIONS.

(Filed 30 September, 1964.)

**1. Elections § 3—**

The State Board of Elections has been given broad supervisory powers
over primaries and general elections by G.S. 163-10, to the end that, insofar
as possible, the results of primaries and general elections will not be in-
fluenced or tainted with fraud, corruption or other illegal conduct on the
part of election officials or others, and the authority thus given by statute
to investigate alleged fraud and irregularities is not limited by G.S. 163-
10(11) to the purpose of reporting them to the Attorney General or solicitor
for further investigation.

**2. Same; Elections § 6—**

While returns certified to the State Board of Elections by a county board
of elections, nothing else appearing, will be deemed *prima facie* correct,
such certification is not conclusive and may be collaterally attacked.

**3. Same—**

A county board of elections is the proper agency to canvass the returns
for county offices in primary as well as in general elections, G.S. 163-86,
but the State Board of Elections is the proper agency to canvass and ju-
dicially declare the results of an election in a district composed of more
than one county.

**4. Mandamus § 1—**

A mandatory injunction to compel a board or public official to perform
an asserted duty and a *mandamus* to compel the performance of such
duty are identical in function and purpose, and will not lie except to com-
pel the performance of a clear and positive legal duty at the instance of a
person having a clear legal right to demand performance; it will not lie
to control the exercise of a discretionary function or the discharge of a
judicial or *quasi*-judicial function unless there has been a clear abuse of
discretion.

**5. Elections § 6—After certification of primary returns by a county board,
the State Board may go behind returns and declare the nominee.**

Where, in a multiple county senatorial district, protest is filed with the
State Board of Elections by a candidate in the primary election charging
fraud and irregularities in the conduct of the election in one of the coun-
ties, the State Board of Elections has the power to go behind the certifica-
tion of the county board, make findings of fact and conclusions of law and,
upon such findings, to determine which candidate is entitled to be certified
as the nominee, and while the findings and conclusions of the State Board
may be reviewed in an action instituted in the Superior Court of Wake
County, such review is upon the findings and conclusions of the State
Board, without intervention of a jury, G.S. 143-307, and *mandamus* or a
mandatory injunction will not lie to compel the State Board to declare a

particular nominee, nor has the Superior Court of a county other than Wake County jurisdiction to review such order. G.S. 143-307, G.S. 143-309.

APPEAL by plaintiff and defendants from *Huskins, J.,* in Chambers at Burnsville, North Carolina, 8 August 1964. From MADISON.

This is a civil action to restrain the defendants from certifying Clyde M. Norton as the Democratic nominee for the office of Senator for the 34th Senatorial District, as the result of the primary election held on 30 May 1964, and to require the defendants by writ of *mandamus* and mandatory injunction to declare the plaintiff the Democratic nominee for the said office as the result of said primary election, upon the basis of alleged lawful returns filed with the defendants.

The essential facts are these:

Clyde M. Norton and Zeno H. Ponder were opposing candidates for the Democratic nomination for the office of Senator for the 34th Senatorial District of North Carolina in the primary held on 30 May 1964. Upon the face of the original returns made to the State Board of Elections by the several county boards of election (four in number), the plaintiff, Zeno H. Ponder, received 7,508 votes, and his opponent, Clyde M. Norton, received 7,108 votes, giving the plaintiff a majority of 400 votes over his opponent. The vote in the four counties comprising the 34th Senatorial District was as follows: In Madison, Norton received 518 votes, Ponder 5,269; In Mitchell, Norton received 848 votes, Ponder 209; in McDowell, Norton received 4,197 votes, Ponder 1,178; in Yancey, Norton received 1,545 votes and Ponder 852.

On 4 June 1964 Clyde M. Norton, a resident of McDowell County and a candidate for the nomination in question, filed a protest with the State Board of Elections as to the conduct of the primary election in Madison County held on 30 May 1964, alleging illegal voting, fraud and other irregularities. Copies of this protest were mailed on 4 June 1964 to Zeno H. Ponder and to the Madison County Board of Elections.

The State Board of Elections, on 9 June 1964, canvassed the results of the State primary election and made the necessary tabulations and judicial determinations as to all the nominees and certified the same as nominees except it refused to certify the plaintiff, Zeno H. Ponder, as the nominee for the State Senate for the 34th Senatorial District because of the protest alleging misconduct, fraud, and the casting of illegal ballots in Madison County.

Thereafter, the State Board of Elections began on 11 June 1964 to conduct an extensive investigation and held numerous hearings in Mad-

ison County which involved the taking of evidence from numerous witnesses, the transcript of which evidence consists of approximately 2,000 pages.

On 2 July 1964 plaintiff Zeno H. Ponder instituted this action in the Superior Court of Madison County, North Carolina, and applied for a writ of *mandamus* to compel the State Board of Elections to certify plaintiff as the nominee for said office, contending that under G.S. 163-138 it was merely the duty of the State Board of Elections to compile and tabulate the returns as certified by the various county boards of election and that this was a ministerial duty which the plaintiff has a present, clear and legal right to require of the said State Board of Elections; that thereafter the plaintiff sought and obtained a temporary restraining order which restrained the defendants from requiring the Madison County Board of Elections from certifying any amended returns, from altering the number of ballots received from Madison County in behalf of Zeno H. Ponder, and from certifying any person other than Zeno H. Ponder as nominee for the office of Senator for the 34th Senatorial District.

The defendants filed answer to said motion and asked that the temporary restraining order be dissolved and that an order be entered authorizing the State Board of Elections to proceed to tabulate, canvass, and judicially determine the nominee of the Democratic Party for said senatorial office. Likewise, the defendants filed an answer to the application for writ of *mandamus.*

The matter came on for hearing before his Honor J. Frank Huskins, Resident Judge of the 24th Judicial District, in Chambers at Burnsville, North Carolina, on 8 August 1964.

The matter was heard upon an agreed statement of facts except the plaintiff introduced in evidence the abstract of the votes for the office of Senator for the 34th Senatorial District in Madison County as certified to the State Board of Elections.

The foregoing was all the evidence offered at the hearing.

His Honor entered the following order:

"That the Restraining Order heretofore issued by his Honor W. K. McLean, dated 6 July 1964, be dissolved to the end that the State Board of Elections may at the earliest possible date, convene in the City of Raleigh to canvass the returns from Madison County, Yancey County, Mitchell County and McDowell County of the votes cast in said counties for Zeno H. Ponder and Clyde M. Norton for Democratic Nominee for State Senator for the 34th Senatorial District; to consider the evidence taken by said State Board of Elections during its investigations conducted in Madison County since 11 June 1964; to thereupon

determine which candidate, in its opinion, is entitled to be declared the Democratic Nominee for State Senator of the 34th Senatorial District and notify plaintiff and his counsel and Clyde M. Norton and his counsel what determination of the matter has been made.

"IT IS FURTHER ORDERED that the State Board of Elections shall not certify a candidate based upon such determination of entitlement until this case has been heard by the Judge Presiding (or until further ORDERS by him) and a jury, if demanded by either party, at the next Session of the Superior Court of Madison County, Regular or Special, whichever may convene first.

"IT IS FURTHER ORDERED that this case be, and it is hereby set peremptorily as the first case for trial at the next Session of the Superior Court of Madison County, be it a Regular or Special Session. * * *"

On 18 August 1964 the defendants petitioned this Court for a writ of *supersedeas* and a writ of prohibition to stay any further proceedings in the Superior Court of Madison County in this case, until the appeal herein is heard and disposed of by this Court. We allowed the writs on 28 August 1964 and entered an order granting the relief sought, pending the disposition of this appeal.

The plaintiff and the defendants appeal from the order entered by Huskins, J. on 8 August 1964, and assign error.

*Attorney General Bruton, Deputy Attorney General Ralph Moody and Staff Attorney Harold L. Waters for the State Board of Elections. William J. Cocke and A. E. Leake for plaintiff.*

DENNY, C.J.   The plaintiff's first assignment of error challenges the correctness of the order entered by Huskins, J., on 8 August 1964, directing the defendants "to consider the evidence taken by said State Board of Elections during its investigations conducted in Madison County since 11 June 1964 * * *."

The plaintiff's second assignment of error challenges the order on the ground that, in effect, it presupposes the authority of the State Board of Elections to go behind the returns certified by the County Board of Elections in Madison County and to ascertain whether or not void, fraudulent or otherwise illegal votes were included in the certified returns to the State Board of Elections by the County Board of Elections in Madison County; and, in effect, recognizes the power of the State Board of Elections to require the Madison County Board of Elections to amend its returns and to declare which candidate, based on the

amended returns, is entitled to be certified as the nominee of the Democratic Party for State Senator for the 34th Senatorial District.

These assignments of error will be considered together.

The plaintiff's position is that the State Board of Elections cannot go behind the returns certified to it by a county board of elections; that in such a situation the only duty of the State Board of elections is to compile and tabulate the returns as certified by the various county boards of election and that this is merely a ministerial duty to be performed pursuant to the provisions of G.S. 163-138. We do not concur in this view when a protest has been filed challenging the legality of the returns certified by a county board of elections.

In the case of *Burgin v. Board of Elections,* 214 N.C. 140, 198 S.E. 592, this Court said: "The fact that after the returns are in, the State Board of Elections is to canvass the returns and 'determine whom they ascertain and declare by the count' (1933, ch. 165, sec. 9) to be nominated or elected is not to be construed as a denial or negation of its supervisory powers, which perforce are to be exercised prior to the final acceptance of the several returns. Nor will the courts undertake to control the State Board in the exercise of its duty of general supervision so long as such supervision conforms to the rudiments of fair play and the statutes on the subject."

By the enactment of Chapter 165 of the Public Laws of 1933 (now codified as Chapter 163, General Statutes of North Carolina) the General Assembly gave broad supervisory powers to the State Board of Elections.

It would seem that by the enactment of G.S. 163-10 and other sections of Chapter 163 of the General Statutes, the General Assembly gave the State Board of Elections power to supervise primaries and general elections to the end that, insofar as possible, the results in primary and general elections in North Carolina will not be influenced or tainted with fraud, corruption or other illegal conduct on the part of election officials or others, and we so hold. The people are entitled to have their elections conducted honestly and in accordance with the requirements of the law. To require less would result in a mockery of the democratic processes for nominating and electing public officials.

It is provided in G.S. 163-10, among other things, that "It shall be the duty of the State Board of Elections:

"(10)  To compel the observance, by election officers in the counties, of the requirements of the election laws, and the State Board of Elections shall have the right to hear and act on complaints arising by petition or otherwise, on the failure or neglect of a county board of elections to comply with any part of the election laws pertaining to their

duties thereunder. And the State Board of Elections shall have power to remove any member of a county board of elections for neglect or failure in his duties and to appoint a successor.

"(11)   To investigate when necessary or advisable, the administration of election laws, frauds and irregularities in elections in any county, and to report violations of the election laws to the Attorney General or solicitor of the district for further investigation and prosecution.

"(15)   To have the general supervision over the primaries and elections in the State and it shall have the authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable: Provided same shall not conflict with any provisions of the law."

We do not construe G.S. 163-10 (11) to limit the authority of the State Board of Elections merely to an investigation of alleged "frauds and irregularities in elections in any county," for the sole purpose of making a report of such frauds and irregularities to the Attorney General or solicitor for further investigation and prosecution. The State Board of Elections is a *quasi*-judicial agency and may, in a primary or election in a multiple county district, investigate alleged frauds and irregularities in elections in any county upon appeal from a county board or upon a protest filed in apt time with the State Board of Elections, and may take such action as the findings of fact may justify, and may direct a county board of elections to amend its returns in accordance therewith. *Burgin v. Board of Elections, supra.*

Findings of fact and conclusions of law made by the State Board of Elections may be reviewed in an action instituted in the Superior Court of Wake County pursuant to the provisions of G.S. 143-307. In such action, however, the appellant is not entitled to a jury trial. In *Burgin v. Board of Elections*, 214 N.C. 324, 199 S.E. 72 this Court said: "* * * (T)he judge of the Superior Court will proceed to determine as a matter of law on the facts found, without the intervention of a jury, whether complete, legal and final returns from all the counties in the * * * District have been made, filed and accepted, or as a matter of law ought to have been accepted, by the State Board of Elections. If it be made to appear that such returns have been so made, the court shall thereupon dissolve the restraining order * * *, and determine whether upon such returns the plaintiff has shown a clear legal right to the writ of *mandamus,* and enter judgment accordingly. Unless so shown, the plaintiff's application therefor should be dismissed."

The case of *Ledwell v. Proctor*, 221 N.C. 161, 19 S.E. 2d 234, was a civil action in the nature of a *quo warranto* to try title to the office of

alderman of the town of Sanford. On appeal this Court said: "In canvassing the returns and judicially determining the result the board of canvassers must pass upon the legality of any disputed ballots. *Burgin v. Board of Elections,* 214 N.C. 140, 198 S.E. 592.

"It follows that the board of elections has authority, judicial in its nature, to examine the returns and decide upon their regularity, correctness and sufficiency, and to accept or reject them. *Gatling v. Boone,* 98 N.C. 573 (3 S.E. 392) ; *Barnett v. Midgett,* 151 N.C. 1, 65 S.E. 441. It constitutes an essential part of the machinery provided by statute for the ascertainment of the successful candidate in an election to which contesting candidates must first resort for the determination and declaration of the results of the election. The returns made by the registrars and judges of election merely constitute a preliminary step and such returns alone do not entitle the apparently successful candidate to the office."

While returns certified to the State Board of Elections by a county board of elections, nothing else appearing, will be deemed to be *primâ facie* correct, such certification, however, is not conclusive. *Ledwell v. Proctor, supra.* Returns certified by a county board of elections may be collaterally attacked. *Barnett v. Midgett,* 151 N.C. 1, 65 S.E. 441.

There is a well defined distinction between a primary election and a regular election, as pointed out in the case of *Rider v. Lenoir County,* 236 N.C. 620, 73 S.E. 2d 913, in which case it is said: "A primary election is a means provided by law whereby members of a political party select by ballot candidates or nominees for office; whereas a regular election is a means whereby officers are elected and public offices are filled according to established rules of law. In short, a primary election is merely a mode of choosing candidates of political parties, whereas a regular election is the final choice of the entire electorate. G.S. 163-117 to 147; 29 C.J.S., Elections, Section 1(d) and (e) ; Words and Phrases, Permanent Edition, Vol. 36, p. 667, *et seq.*"

A county board of elections is the proper agency to canvass the returns in a primary for the selection of party nominees for county offices as well as in a general election to fill such offices. G.S. 163-86; *Strickland v. Hill,* 253 N.C. 198, 116 S.E. 2d 463. However, G.S. 163-93 provides: "The State Board of Elections shall constitute the legal canvassing board for the State of all national, State and district offices, including the office of State Senator in those districts consisting of more than one county. * * *"

Therefore, we hold that the State Board of Elections is the appropriate agency to canvass and judicially declare the results of a primary

for the nomination of a candidate in a senatorial district composed of more than one county.

Whenever a protest is filed before a county board of elections in a multiple county senatorial district, charging fraud and misconduct in connection with the conduct of a primary or election in such county, and there is an appeal from said board, or upon protest filed in apt time with the State Board of Elections, the State Board has the legal right and the duty to investigate such charges and determine the actual total of valid ballots cast in such county and to require the county board of elections to amend its returns accordingly; and, based upon its findings and the returns amended in accord therewith, to determine which candidate is entitled to be certified as the nominee in such multiple county senatorial district.

These assignments of error are overruled.

The plaintiff's third and last assignment of error challenges the correctness of the court below in dissolving the restraining order theretofore issued by McLean, J. on 6 July 1964, and in failing to continue said order during the pendency of the action and to the final determination of the cause.

The appellant is not entitled to have the State Board of Elections restrained in order to keep said Board from completing its investigation of the protest filed, finding the facts with respect thereto and making its conclusions of law based thereon. Furthermore, since there is no protest before the State Board of Elections involving the returns from any of the counties composing the 34th Senatorial District except from Madison County, when the amended returns from Madison County are certified in accord with the findings of fact and conclusions of law made by said Board, it will have the legal duty to declare the results of the primary election held on 30 May 1964 and to certify the nominee. This assignment of error is overruled.

The defendants challenge the right of the plaintiff to the relief sought in this action. The plaintiff has applied for a writ of *mandamus* to be entered against the defendants to compel them to declare and certify the plaintiff as the Democratic nominee for State Senator in the 34th Senatorial District. In this action the plaintiff also sought and obtained a temporary restraining order, restraining the defendants from entering any "order or direction altering the vote in Madison County as officially reported to them * * * and from certifying any person other than the plaintiff as Democratic nominee for Senator * * * in the 34th Senatorial District of North Carolina."

The law in this State with respect to the circumstances under which a writ of *mandamus* or mandatory injunction may be legally issued, is

succinctly stated in the opinion by *Parker, J.,* in *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885, as follows: "* * * (A) party seeking a writ of *mandamus* must have a clear legal right to demand it, and the party to be coerced must be under a positive legal obligation to perform the act sought to be required. *Hancock v. Bulla,* 232 N.C. 620, 61 S.E. 2d 801; *Laughinghouse v. New Bern, Ibid,* p. 596, 61 S.E. 2d 802; *Steele v. Cotton Mills,* 231 N.C. 636, 58 S.E. 2d 620; *Ingle v. Board of Elections,* 226 N.C. 454, 38 S.E. 2d 566; *White v. Comrs. of Johnston,* 217 N.C. 329, 7 S.E. 2d 825; *Mears v. Board of Education,* 214 N.C. 89, 197 S.E. 752; *Person v. Doughton,* 186 N.C. 723, 120 S.E. 481. 'A mandatory injunction, when issued to compel a board or public official to perform a duty imposed by law, is identical in its function and purpose with that of a writ of *mandamus.* * * * Such writ *(mandamus)* will not be issued to enforce an alleged right which is in question.' *Hospital v. Wilmington,* 235 N.C. 597, 70 S.E. 2d 833; *Harris v. Board of Education,* 216 N.C. 147, 4 S.E. 2d 328.

"It is well settled law that *mandamus* cannot be invoked to control the exercise of discretion of a board, officer, or court when the act complained of is judicial or *quasi*-judicial, unless it clearly appears that there has been an abuse of discretion. The function of the writ is to compel the performance of a ministerial duty — not to establish a legal right, but to enforce one which has been established. *Hayes v. Benton,* 193 N.C. 379, 137 S.E. 169; *Wilkinson v. Board of Education,* 199 N.C. 669, 155 S.E. 562; *Harris v. Board of Education, supra.*" *Hinshaw v. McIver,* 244 N.C. 256, 93 S.E. 2d 90; *Watson v. Farms, Inc.,* 253 N.C. 238, 116 S.E. 2d 716.

A county board of elections in a multiple county senatorial district has no power to canvass the election returns and determine judicially the nominee in such district; that power is vested exclusively in the State Board of Elections. G.S. 163-93. When the State Board of Elections obtains jurisdiction of an election protest upon an appeal from a single county in a multiple county senatorial district, or by the filing in apt time of a protest directly with the State Board of Elections, its decision can only be reviewed in the manner prescribed by Article 33, Chapter 143 of the General Statutes of North Carolina. The Superior Court does not have original jurisdiction to hear and determine such controversies.

G.S. 163-118, in pertinent part, provides: "Unless otherwise provided in this article, such primary elections shall be conducted, as far as practicable, in all things and in all details in accordance with the general election laws of this State, and all the provisions of this chapter and of other laws governing elections not inconsistent with this article

shall apply as fully to such primary elections and the acts and things done thereunder as to general elections * * *." *Strickland v. Hill, supra.* See also G.S. 163-146.

In pertinent part, G.S. 143-309 provides: "In order to obtain judicial review of an administrative decision under this chapter the person seeking review must file a petition in the Superior Court of Wake County; except that where the original determination in the matter was made by a county agency or county board and appealed to the State Board, the petition may be filed in the superior court of the county where the petitioner resides. * * *"

The County Board of elections in Madison County did not originally determine the matters at issue in this proceeding. There was no appeal from the County Board of Elections in Madison County. This investigation was instituted by the State Board of Elections upon a protest filed with said State Board by Clyde M. Norton, who alleged fraud and irregularities in the conduct of the primary election held in Madison County on 30 May 1964.

The plaintiff has not shown a clear legal right to a writ of *mandamus* to require the defendants to declare and certify him as the Democratic nominee for State Senator for the 34th Senatorial District, and the application therefor is dismissed. Nor has the plaintiff shown any right to a restraining order, temporary or otherwise, restraining the State Board of Elections from discharging its statutory duty and certifying a candidate as the Democratic nominee for said senatorial district.

The order entered below on 8 August 1964 is set aside, and the temporary restraining order entered on 6 July 1964 is dissolved, to the end that the State Board of Elections may proceed to declare and certify the Democratic nominee for the 34th Senatorial District.

Likewise, in light of the facts disclosed by this record, we hold that the Superior Court of Madison County is without jurisdiction to review an order of the State Board of Elections; hence, this action is dismissed. G.S. 143-307 and G.S. 143-309; *In re Halifax Paper Co., Inc.,* 259 N.C. 589, 131 S.E. 2d 441; *In re Carter,* 262 N.C. 360, 137 S.E. 2d 150.

Action dismissed.